FOR PUBLICATION

IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

|  |  |  |
|---|---|---|
| BERNE CORP. and B & B CORP., TWENTY-ONE QUEENS QUARTER, INC., MILLER PROPERTIES, INC., EQUIVEST ST. THOMAS, INC., ROBERT SCHMIDT, KIM HOLDSWORTH, ROBERT SCHMIDT DEVELOPMENT CORP., and DORI P. DERR, THE CYRIL V. FRANCOIS ASSOCIATES, LLC, SHELL SEEKERS, INC., CHARLES W. CONSOLVO, LINDA B. CONSOLVO, SNEGLE GADE ASSOCIATES LP, CHARLES W. CONSOLVO as Trustee of the YVETTE B. LEDERBERG TRUST, ARTHUR B. CHOATE, STEWART LOVELAND, and STACY LOVELAND, ELIZABETH SHARP, LINDON CORP., GORDON L. COFFELT, SORAYA DIASE COFFELT, and ONE STOP, INC., | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Civil Nos. 2000-141<br>2000-167<br>2001-151<br>2001-155<br>2001-181<br>2001-196<br>2001-197<br>2001-228<br>2002-057 |
| Plaintiffs, | ) ) |  |
| v. | ) ) |  |
| GOVERNMENT OF THE VIRGIN ISLANDS, ROY MARTIN, in his official capacity as Tax Assessor, and the Board of Tax Review, | ) ) ) ) ) |  |
| Defendants. | ) ) |  |

ATTORNEYS:

**James M. Derr, Esq.**
St. Thomas, U.S.V.I.
        *For plaintiffs Berne Corp., B & B Corp., Miller*
        *Properties, Inc., Robert Schmidt, Robert Schmidt*
        *Development Corp., Kim Holdsworth, Dori P. Derr, Shell*
        *Seekers, Inc., Charles W. Consolvo, Linda B. Consolvo,*
        *Snegle Gade Associates, LP, Charles W. Consolvo as*
        *Trustee of the Yvette B. Lederberg Trust, Arthur B.*

*Berne Corp., et al. v. Gov't of the V.I., et al.*
Civil Nos. 2000-141, 2000-167, 2001-151, 2001-155, 2001-181, 2001-196,
2001-197, 2001-228, 2002-057
Memorandum Opinion
Page 2

> *Choate, Stewart Loveland, Stacy Loveland, and Elizabeth Sharp.*

**Chad C. Messier, Esq.**
St. Thomas, U.S.V.I.
> *For plaintiff Equivest St. Thomas, Inc.*

**Soraya Diase-Coffelt, Esq.**
St. Thomas, U.S.V.I.
> *For plaintiffs Lindon Corp., Gordon L. Coffelt, Soraya Diase Coffelt, and One Stop, Inc.*

**David A. Bornn, Esq.**
St. Thomas, U.S.V.I.
> *For plaintiffs The Cyril V. Francois Associates, LLC and Twenty-One Queens Quarter, Inc.*

**Carol Thomas-Jacobs, Esq.**
St. Thomas, U.S.V.I.
> *For the defendants.*


**<u>MEMORANDUM OPINION</u>**


**GÓMEZ, C.J.**

Before the Court is the motion of the defendants, the Government of the Virgin Islands (the "Government"); Roy Martin, in his official capacity as Tax Assessor ("Martin"); and the Board of Tax Review (collectively referred to as the "Defendants"), to lift a permanent injunction issued by this Court. The Defendants seek relief pursuant to Rule 60(b) of the Federal Rules of Civil Procedure ("Rule 60(b)").

*Berne Corp., et al. v. Gov't of the V.I., et al.*
Civil Nos. 2000-141, 2000-167, 2001-151, 2001-155, 2001-181, 2001-196,
2001-197, 2001-228, 2002-057
Memorandum Opinion
Page 3

# I. FACTUAL AND PROCEDURAL BACKGROUND

## A.    The Berne Litigation

In 1936, Congress promulgated legislation to harmonize
property taxes in the U.S. Virgin Islands across different types
and uses of land and to reduce the burden of taxation on land in
productive use (the "1936 Act").[1] *See* 48 U.S.C. §§ 1401-1401e.
The 1936 Act provided that "all taxes on real property in the
Virgin Islands shall be computed on the basis of the actual value
of such property . . . ." *Id.* at § 1401a.  Despite that
provision, over a period of time the Defendants assessed the
value of commercial properties based on replacement value, rather
than the actual value.  Consequently, plaintiffs Berne
Corporation and B&B Corporation (collectively referred to as
"Berne") sued Martin in his official capacity under Section 1 of
the Civil Rights Act of 1871, 42 U.S.C. § 1983, and Title 5,

---

[1]    Congress has plenary authority under the Constitution to
govern the U.S. Virgin Islands. *See* U.S. CONST. art. IV, § 3, cl.
2 ("The Congress shall have Power to dispose of and make all
needful Rules and Regulations respecting the Territory or other
Property belonging to the United States . . . .").

*Berne Corp., et al. v. Gov't of the V.I., et al.*
Civil Nos. 2000-141, 2000-167, 2001-151, 2001-155, 2001-181, 2001-196,
2001-197, 2001-228, 2002-057
Memorandum Opinion
Page 4

Section 80 of the Virgin Islands Code ("Section 80").[2]  Berne

sought an injunction to require Martin to assess its property on

its actual value, as required by the 1936 Act.

On September 21, 2000, this Court ruled that the 1936 Act

"creates a federally protected right actionable pursuant to 42

U.S.C. § 1983." *See Berne Corporation v. Gov't of the Virgin*

*Islands*, 120 F. Supp. 2d 528, 535 (D.V.I. 2000), *aff'd* 105 Fed.

Appx. 324 (3d Cir. 2004).  The Court further held that Berne had

standing to bring its suit under Section 80 on behalf of all

similarly situated taxpayers to restrain violations of the

statute requiring property taxes to be based on actual value. *See*

*id.*  In that same decision, the Court preliminarily enjoined the

Government and Martin from assessing and collecting commercial

property taxes in violation of the 1936 Act.

Following the Court's ruling, the parties negotiated a

settlement (the "Berne Settlement"), which the Court approved on

December 19, 2000.  The Berne Settlement provided that the

Government and Martin would bring the Virgin Islands real

_____

[2]  Title 5, Section 80 provides:

> A taxpayer may maintain an action to restrain
> illegal or unauthorized acts by a territorial
> officer or employee, or the wrongful disbursement of
> territorial funds.

V.I. CODE ANN. tit. 5, § 80.

*Berne Corp., et al. v. Gov't of the V.I., et al.*
Civil Nos. 2000-141, 2000-167, 2001-151, 2001-155, 2001-181, 2001-196,
2001-197, 2001-228, 2002-057
Memorandum Opinion
Page 5

property tax system into compliance with the federal requirement

that property be assessed at its actual value.[3]  Pursuant to the

Berne Settlement, the parties stipulated to the selection of a

Special Master.  The Court subsequently approved the Special

Master selected by the parties.

    While the new tax assessment system was being implemented

pursuant to the Berne Settlement, the other plaintiffs in this

matter (Berne and these other plaintiffs are collectively

referred to as the "Plaintiffs") filed lawsuits in this Court to

challenge their tax bills based on the pre-Berne Settlement tax

_____

    [3]  The Settlement also provided that the parties would
mutually agree on the selection of a Special Master to

        . . . . review the procedures and process to be used
        by the Virgin Islands Tax Assessor's office in
        appraising commercial properties pursuant to a mass
        appraisal approach and Uniform Standards of
        Professional Appraisal Practice (Hereinafter
        referred to as "USPAP") Standards. For appeal
        purposes only, USPAP standards for single property
        appraisal will apply. (Subject to Jurisdictional
        Exception of USPAP)

        . . . . certify the procedures to be used as proper.

        . . . . do appropriate random sampling, of no more
        than ten percent 10%, of assessments for compliance
        [and]

        . . . . submit a report to the Court, as to
        compliance, every 180 days for a period of two (2)
        years.

(Settlement Agreement at 2.)

*Berne Corp., et al. v. Gov't of the V.I., et al.*
Civil Nos. 2000-141, 2000-167, 2001-151, 2001-155, 2001-181, 2001-196,
2001-197, 2001-228, 2002-057
Memorandum Opinion
Page 6

assessment system.  One of those Plaintiffs, Equivest St. Thomas,

Inc., successor to Bluebeard's Castle, Inc. ("Equivest"), moved

for a preliminary injunction to enjoin the collection of its 2000

property tax bills.  The Defendants thereafter filed a motion to

stay all discovery except document production, and, as this Court

noted, "made a binding judicial admission that 'pursuant to the

terms of that settlement, all commercial property in the Virgin

Islands is to be appraised at actual value in accordance with

[the 1936 Act] . . . and in accordance with the Uniform Standards

of Professional Appraisal Practice.'" *See Berne Corp. v. Gov't of

the V.I.*, 262 F. Supp. 2d 540, 549 (D.V.I. 2003) (quoting Defs.'

Mot. to Stay Disc., at ¶ 1 (filed in Civ. No. 2001-155)).  The

Defendants further agreed to extend the Berne Settlement to

residential properties, and asserted its willingness to settle

all of the newly-filed cases. *See id.*

B.   **The May 12, 2003 Decree**

     The Government's subsequent settlement negotiations with

Equivest proved fruitless.  As a result, Equivest renewed its

motion for a preliminary injunction.  The Court scheduled a trial

on the merits.

     On May 12, 2003, the Court issued a permanent injunction

(the "May 12, 2003 Decree").  The May 12, 2003 Decree enjoined

the Defendants from assessing any and all real property in the

*Berne Corp., et al. v. Gov't of the V.I., et al.*
Civil Nos. 2000-141, 2000-167, 2001-151, 2001-155, 2001-181, 2001-196,
2001-197, 2001-228, 2002-057
Memorandum Opinion
Page 7

Virgin Islands.  The Court also enjoined the Defendants from
requiring the payment of real property tax bills.  The Court
required satisfaction of two primary conditions before the
government could assess real property and issue tax bills.  The
first condition was the establishment of a property tax system
that reliably and credibly assessed and taxed all real property
based on its actual value. *See id.* at 575.  The second condition
required the Government to demonstrate to the Court's
satisfaction that it has a functioning Board of Tax Review that
consistently holds hearings and reaches determinations on appeals
within sixty days.[4] *See id.*  The Court also held that the
Government could issue bills based on the assessment values for
the 1998 calendar year reflected in the 1999 tax bills if it
provided a mechanism to adjust the assessments and bills
retroactively.  Thereafter, the Legislature of the Virgin Islands
passed Act No. 6586 ("Act 6586"), which provided for such a
mechanism.  That act was signed into law on July 14, 2003.

    In that same Order, the Court further held that the Berne
Settlement applied to all real property owners in the Virgin
Islands, and that the Defendants had breached the Berne

_____

    [4]  The second condition was the result of the Court
concluding that in addition to a statutory violation of the 1936
Act the Government's conduct constituted a constitutional due
process violation.

*Berne Corp., et al. v. Gov't of the V.I., et al.*
Civil Nos. 2000-141, 2000-167, 2001-151, 2001-155, 2001-181, 2001-196,
2001-197, 2001-228, 2002-057
Memorandum Opinion
Page 8

Settlement by, *inter alia*, failing to fund the tax reassessment system.  Consequently, the Court ordered specific performance of the Berne Settlement.[5] *See id.* at 574-75.

On August 13, 2003, on the Defendants' motion, the Court modified the May 12, 2003 Decree.  The Court found that, in light of Act 6586, the Government had "acted sufficiently to provide relief for the Territory's taxpayers and . . . that the Government is entitled to collect revenue from property taxes." *In re Tax Litig.*, 276 F. Supp. 2d 435, 436 (D.V.I. 2003). Therefore, the Court modified the May 12, 2003, Decree "to allow the Government to issue tax bills based on the 1998 assessments reflected in the 1999 tax bills." *Id.*  The Court noted that the Decree "shall remain unmodified and in full effect for all parties to this litigation." *Id.*  Aside from the August 13, 2003, modification, the May 12, 2003, Decree remains in full force and effect.

_____

[5]  The Court issued separate opinions regarding the implementation of the Berne Settlement as to the plaintiffs in this matter on an individual basis. *See*, *e.g.*, *Cyril V. Francois Assocs, LLC  v. Gov't of the V.I.*, 313 F. Supp. 2d 514, 515 (D.V.I. 2004) ("All that remains for resolution in this case is application of [the Berne Injunction] to the unique facts posed in this individual action.").

*Berne Corp., et al. v. Gov't of the V.I., et al.*
Civil Nos. 2000-141, 2000-167, 2001-151, 2001-155, 2001-181, 2001-196,
2001-197, 2001-228, 2002-057
Memorandum Opinion
Page 9

## C.    The Repeal Act

On June 29, 2007, Congress repealed the 1936 Act,
retroactive to July 22, 1954 (the "Repeal Act").

The Defendants subsequently filed the motion now before the
Court.  The Defendants argue that the Court should vacate the May
12, 2003 Decree, and dismiss this matter.  The Defendants argue
that the 1936 Act was the sole basis of the Plaintiffs' lawsuits,
and that it was repealed by Congress on July 29, 2007,
retroactive to July 22, 1954.[6]  The Defendants also argue that
the Berne Settlement is no longer binding.  The Defendants did
not address whether the Board of Tax Review was functioning in
accordance with the May 12, 2003 Decree in the motion to vacate.

In the wake of the Repeal Act, on March 10, 2008, the
Governor of the Virgin Islands signed into law Act No. 6991 ("Act
6991").  Act 6991 amends or repeals several sections of Title 33
of the Virgin Islands Code, which sets forth the laws governing
taxation and finance in the territory.

On April 10, 2008, the Special Master designated by the
parties pursuant to the Berne Settlement filed a report with the

---

[6]  The Court held a status conference with the parties in
this matter on March 4, 2008.  The Court thereafter ordered the
Defendants to file a supplemental brief by April 1, 2008, and the
Plaintiffs to file a responsive brief by April 15, 2008.  Both
sides have filed briefs per the Court's order.

*Berne Corp., et al. v. Gov't of the V.I., et al.*
Civil Nos. 2000-141, 2000-167, 2001-151, 2001-155, 2001-181, 2001-196,
2001-197, 2001-228, 2002-057
Memorandum Opinion
Page 10

Court.  In that report, the Special Master concluded that the

Defendants are in compliance with the May 12, 2003 Decree.  The

Special Master also offered several observations about the tax

reassessment scheme and specified that his opinion was subject to

a series of conditions set forth in the report.  The Plaintiffs

timely filed objections to the Special Master's report pursuant

to Federal Rule of Civil Procedure 53(f)(2)[7], and requested a

hearing on the report pursuant to Federal Rule of Civil Procedure

53(f)(1).[8]  The Court held such a hearing on June 19, 2008.

## D.    The Board of Tax Review

Because one of the conditions precedent to the lifting of

the injunction was the existence of a functioning Board of Tax

---

[7]  Federal Rule of Civil Procedure 53(f)(2) provides:

> A party may file objections to — or a motion to
> adopt or modify — the master's order, report, or
> recommendations no later than 20 days after a copy
> is served, unless the court sets a different time.

Fed. R. Civ. P. 53(f)(2).

[8]  Federal Rule of Civil Procedure 53(f)(1) provides:

> In acting on a master's order, report, or
> recommendations, the court must give the parties
> notice and an opportunity to be heard; may receive
> evidence; and may adopt or affirm, modify, wholly or
> partly reject or reverse, or resubmit to the master
> with instructions.

Fed. R. Civ. P. 53(f)(1).

*Berne Corp., et al. v. Gov't of the V.I., et al.*
Civil Nos. 2000-141, 2000-167, 2001-151, 2001-155, 2001-181, 2001-196,
2001-197, 2001-228, 2002-057
Memorandum Opinion
Page 11

Review, on July 2, 2008, the Court held an evidentiary hearing to
determine whether the Board is functioning in a manner consistent
with the May 12, 2003 Decree.  At the hearing, the Government
presented the testimony of Claudette Watson Anderson
("Anderson"), Commissioner of Finance.  Anderson testified that
she was appointed as the Commissioner of Finance in May, 2007,
and confirmed by the Legislature of the Virgin Islands (the
"Legislature") in July, 2007.  Anderson also testified that she
is the chairperson of the Board of Tax Review, which is made up
of five individuals, including herself.  Four members are
required to reach a quorum.  The Board of Tax Review started out
with an appropriation of about $173,000, and was given an
additional $559,000 in funding by the Legislature.  Anderson
further testified that she was aware that the Legislature
authorized the Board of Tax Review to hire hearing examiners.  To
that end, Anderson testified that the Board has approached three
individuals, but that no hearing examiners have been hired.

Anderson also testified that the Board of Tax Review held
two meetings in 2008.  The first meeting was held on May 30,
2008.  On that date, the Board decided eighty-four cases for
twelve taxpayers.  The second meeting was held on June 27, 2008.
On that date, the Board decided thirty-seven cases for twenty-
seven taxpayers.  A total of 374 appeals remain pending.  Of the

*Berne Corp., et al. v. Gov't of the V.I., et al.*
Civil Nos. 2000-141, 2000-167, 2001-151, 2001-155, 2001-181, 2001-196,
2001-197, 2001-228, 2002-057
Memorandum Opinion
Page 12

twelve taxpayers whose appeals were heard on May 30, 2008, none

of them were present.   Anderson could not state whether those

persons were given notice that their appeals would be heard on

that day.

The Government also called Walter L. Challenger

("Challenger"), Executive Director of the Board of Tax Review, as

a witness at the hearing.   Like Anderson, Challenger testified

that there was a total of about 374 appeals pending.   Challenger

also testified that for the May 30, 2008, hearing, only some of

the taxpayers received a notice.   Challenger also testified that

to arrive at the 374 figure for pending appeals, three

administrative assistants at the Board of Tax Review manually

went through each file to determine whether an appeal was pending

for that taxpayer.   Challenger also testified that after the May

12, 2003 Decree, the Board made plans to meet every month to

speed up the appellate process.   Challenger also testified that

200 reversion letters[9] were sent out to taxpayers, which also

helped to decrease the number of pending appeals.

At the close of the hearing, the Court requested

supplemental briefing from the parties regarding the 200

---

[9]   Anderson explained at the hearing that a reversion letter
is a letter informing an appellant that the Board is willing to
base its property tax bill on the 1998 property value assessment.

*Berne Corp., et al. v. Gov't of the V.I., et al.*
Civil Nos. 2000-141, 2000-167, 2001-151, 2001-155, 2001-181, 2001-196,
2001-197, 2001-228, 2002-057
Memorandum Opinion
Page 13

reversion letters that were sent out.  On July 7, 2008, the Court
issued an Order directing the Government to file a sworn
statement attesting to the number of meetings convened by the
Board between May 12, 2003 and April 30, 2008, and identifying
the number of appeals resolved during that time period.

In response to the Court's Order, the Government submitted
the sworn statement of Challenger.  In his affidavit, Challenger
stated that the Board held meetings on the following dates:
January 31, 2006, April 25, 2006, May 30, 2006, June 21, 2006,
July 25, 2006, and January 31, 2007.  Within that time period,
Challenger stated that 808 appeals were resolved; 249 were
resolved through meetings; 559 were resolved through reversion
letters and settlements; and an undisclosed amount were resolved
through withdrawals.

## II. <u>DISCUSSION</u>

Rule 60(b) of the Federal Rules of Civil Procedure provides,
in pertinent part:

> On motion and just terms, the court may relieve
> a party or its legal representative from a final
> judgment, order, or proceeding for the following
> reasons:
>
> . . .
>
> (5) the judgment has been satisfied, released,
> or discharged; it is based on an earlier
> judgment that has been reversed or vacated; or

*Berne Corp., et al. v. Gov't of the V.I., et al.*
Civil Nos. 2000-141, 2000-167, 2001-151, 2001-155, 2001-181, 2001-196,
2001-197, 2001-228, 2002-057
Memorandum Opinion
Page 14

      applying it prospectively is no longer
      equitable; or

      (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b).

A Rule 60(b)(5) motion may be granted "when the party seeking relief from an injunction . . . can show 'a significant change either in factual conditions or in law.'" *Agostini v. Felton*, 521 U.S. 203, 215, 117 S.Ct. 1997, 138 L.Ed.2d 391 (1997) (quoting *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 384, 112 S.Ct. 748, 116 L.Ed.2d 867 (1992)).  A change in law can also qualify as one of the "other reasons" justifying relief under Rule 60(b)(6).  While "intervening developments in the law by themselves rarely constitute the extraordinary circumstances required for relief under Rule 60(b)(6)," *Agostini*, 521 U.S. at 239, "a supervening change in governing law that calls into question the correctness of the court's judgment may . . . constitute such an extraordinary circumstance justifying the granting of a Rule 60(b) motion." *Tal v. Miller*, Civ. No. 97-2275, 1999 U.S. Dist. LEXIS 652, at *5 (S.D.N.Y. Jan. 27, 1999) (citing *Sargent v. Columbia Forest Products, Inc.*, 75 F.3d 86, 90 (2d Cir. 1996)) (unpublished); *see also In re Fine Paper Antitrust Litigation*, 840 F.2d 188, 194 (3d Cir. 1988) ("[T]he Rule 60(b)(6) ground for relief from judgment provides for

*Berne Corp., et al. v. Gov't of the V.I., et al.*
Civil Nos. 2000-141, 2000-167, 2001-151, 2001-155, 2001-181, 2001-196,
2001-197, 2001-228, 2002-057
Memorandum Opinion
Page 15

extraordinary relief and may only be invoked upon a showing of

exceptional circumstances.") (quotation omitted).

### III. **ANALYSIS**

As discussed above, the May 12, 2003 Decree imposed two

mandates: (1) the Government must credibly assess and tax real

property at its actual value in accordance with the 1936 Act, and

(2) the Government must have a functioning Board of Tax Review.

The continued validity of each of those mandates is reviewed in

turn to determine whether vacatur is appropriate.

**A.    The Requirement to Assess Real Property in Accordance With
       the 1936 Act**

The Defendants contend, and the Plaintiffs do not dispute,

that Congress has repealed the 1936 Act by way of the Repeal Act.

*See* Pub. L. 110-40, 121 Stat. 232 (2007).  The parties also agree

that the 1936 Act purports to have retroactive effect to 1954.[10]

―――――――――――――――――――

[10]  Ordinarily, whether a statute has retroactive effect is
a question determined according to a two-part test, as
articulated by the Supreme Court in *Landgraf v. USI Film
Products*, 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994).
"Requiring clear intent assures that Congress itself has
affirmatively considered the potential unfairness of retroactive
application and determined that it is an acceptable price to pay
for the countervailing benefits." *Id.* at 272-73.  The Supreme
Court has explained that "in determining a statute's temporal
reach, generally, our normal rules of construction apply . . . ."
*Lindh v. Murphy*, 521 U.S. 320, 326, 117 S.Ct. 2059, 138 L.Ed.2d
481 (1997).  The inquiry is as follows:

     We first look to whether Congress has expressly
     prescribed the statute's proper reach, and in the

*Berne Corp., et al. v. Gov't of the V.I., et al.*
Civil Nos. 2000-141, 2000-167, 2001-151, 2001-155, 2001-181, 2001-196,
2001-197, 2001-228, 2002-057
Memorandum Opinion
Page 16

The Defendants assert that the legislation that formed the basis

for the May 12, 2003 Decree no longer exists.  Because of the

1936 Act's retroactive repeal, the Defendants contend there is no

legal underpinning for the May 12, 2003 Decree.  As such, they

claim that Rule 60(b) requires vacatur.

Rule 60(b)(5) "empowers a court to modify a judgment only if

it is 'prospective,' or executory." *Marshall v. Bd. of Education*,

575 F.2d 417, 425 (3d Cir. 1978) (finding that a judgment for

monetary damages that had been paid was not prospective).  "A

'prospective' injunction envisions a restraint of future conduct,

not an order to remedy past wrongs when the compensation payment

is withheld from the beneficiaries until some subsequent date."

*Id.* at 425 n.27.

────────────

absence of language as helpful as that we try to
draw a comparably firm conclusion about the temporal
reach specifically intended by applying our normal
rules of construction.  If that effort fails, we ask
whether applying the statute to the person objecting
would have a retroactive consequence in the
disfavored sense of affecting substantive rights,
liabilities, or duties [on the basis of] conduct
arising before [its] enactment.

*Fernandez-Vargas v. Gonzales*, 548 U.S. 30, 37, 126 S.Ct. 2422,
165 L.Ed.2d 323 (2006) (internal citations and quotations
omitted) (alterations in original).

Here, the Repeal Act unambiguously states that "[t]his
section shall be deemed to have taken effect on July 22, 1954."
The Court therefore finds that Congress' intent to make the
statute retroactive is clear and unambiguous.

*Berne Corp., et al. v. Gov't of the V.I., et al.*
Civil Nos. 2000-141, 2000-167, 2001-151, 2001-155, 2001-181, 2001-196,
2001-197, 2001-228, 2002-057
Memorandum Opinion
Page 17

The Supreme Court has explained that because Rule 60(b)(5)
"encompasses the traditional power of a court of equity to modify
its decree in light of changed circumstances," *Frew v. Hawkins*,
540 U.S. 431, 441, 124 S.Ct. 899, 157 L.Ed.2d 855 (2004), the
Court "should apply a 'flexible standard' to the modification of
consent decrees when a significant change in facts or law
warrants their amendment." *Id.* (citing *Rufo v. Inmates of Suffolk
County Jail*, 502 U.S. 367, 393,112 S.Ct. 748, 116 L.Ed.2d 867
(1992)).  Under that standard, "[a] party seeking modification of
an [injunction] may meet its initial burden by showing a
significant change either in factual conditions or in law." *Rufo*,
502 U.S. at 384.   If the moving party meets that burden, "the
court should consider whether the proposed modification is
suitably tailored to the changed circumstance." *Id.* at 383.

Modification may likewise "be warranted when the statutory
or decisional law has changed to make legal what the decree was
designed to prevent." *Id.* at 388.  The Supreme Court has also
admonished that "[a] court errs when it refuses to modify an
injunction or consent decree in light of [significant] changes."
*See*, *e.g.*, *Agostini*, 521 U.S. at 215 (citing *System Federation*,
364 U.S. at 647 ("The court cannot be required to disregard
significant changes in law or facts if it is satisfied that what

*Berne Corp., et al. v. Gov't of the V.I., et al.*
Civil Nos. 2000-141, 2000-167, 2001-151, 2001-155, 2001-181, 2001-196,
2001-197, 2001-228, 2002-057
Memorandum Opinion
Page 18

it has been doing has been turned through changed circumstances into an instrument of wrong.") (quotation omitted)).

Here, the May 12, 2003 Decree prevents the Defendants from assessing the Plaintiffs' real properties until a reliable and credible appraisal system is put in place, in compliance with the 1936 Act. *See Berne Corp. v. Gov't of the V.I.*, 262 F. Supp. 2d 540, 571 (D.V.I. 2003). Significantly, that mandate creates an ongoing and prospective obligation to comply with a statute that no longer exists.

The rationale behind that directive – the need to comply with then current federal law – evaporated with the repeal of the 1936 Act. By removing the possibility of violating the 1936 Act, the Repeal Act made legal what the May 12, 2003 Decree sought to prevent.

Nonetheless, the Plaintiffs raise two arguments in opposition to the vacatur motion. First, the Plaintiffs argue that the Repeal Act violates the separation of powers doctrine. Second, the Plaintiffs argue that Act 6991 violates their rights under the Contract Clause of the constitution. Both arguments will be addressed in turn.

### 1.   Separation of Powers

The Plaintiffs contend that the Repeal Act offends the separation-of-powers doctrine because of its "purpose of

*Berne Corp., et al. v. Gov't of the V.I., et al.*
Civil Nos. 2000-141, 2000-167, 2001-151, 2001-155, 2001-181, 2001-196,
2001-197, 2001-228, 2002-057
Memorandum Opinion
Page 19

achieving a specific result in the instant litigation . . . ."
(Pls.' Supp. Mem. in Opp'n to Mot. to Lift Permanent Inj. and
Vacate Ct.'s May 12, 2003 Order and Decree 9) [hereinafter Pls.'
Supp. Mem. in Opp'n].  This argument is essentially twofold.  The
Plaintiffs appear to suggest that the Repeal Act is void to the
extent it (1) reopens a final judgment of this Court and (2)
prescribes a rule of decision in a pending case.  Neither of
these arguments passes muster.

### a.   Reopening a Final Judgment

The Plaintiffs' contention that the Repeal Act is void to
the extent it reopens a final judgment of this Court, is
predicated on the Supreme Court's decision in *Plaut v.
Spendthrift Farm, Inc.*, 514 U.S. 211, 115 S.Ct. 1447, 131 L.Ed.2d
328 (1995).  The Plaintiffs put forward little effort, however,
to explain how that decision serves their cause.

In *Plaut*, the Supreme Court held that a federal statute that
required federal courts to reopen final judgments that had been
entered before the statute's enactment, was unconstitutional on
separation-of-powers grounds. *Id.* at 211.  In a subsequent
decision, the Supreme Court explained that

> this retroactive command that federal courts reopen
> final judgments exceeded Congress' authority.  The
> decision of an inferior court within the Article III
> hierarchy is not the final word of the department
> (unless the time for appeal has expired), and it is

*Berne Corp., et al. v. Gov't of the V.I., et al.*
Civil Nos. 2000-141, 2000-167, 2001-151, 2001-155, 2001-181, 2001-196,
2001-197, 2001-228, 2002-057
Memorandum Opinion
Page 20

> the obligation of the last court in the hierarchy
> that rules on the case to give effect to Congress's
> latest enactment, even when that has the effect of
> overturning the judgment of an inferior court, since
> each court, at every level, must decide according to
> existing laws.  But once a judicial decision
> achieves finality, it becomes the last word of the
> judicial department.  And because Article III gives
> the Federal Judiciary the power, not merely to rule
> on cases, but to decide them, subject to review only
> by superior courts in the Article III hierarchy, the
> judicial Power is one to render dispositive
> judgments, and Congress cannot retroactively command
> Article III courts to reopen final judgments.

*Miller v. French*, 530 U.S. 327, 344, 120 S.Ct. 2246, 147 L.Ed.2d

326 (2000) (explaining the rationale behind the *Plaut* holding)

(internal quotations and citations omitted).

The *Plaut* Court also explained that while "the

separation-of-powers doctrine generally forbids Congress from

reversing final judgments in a suit for money damages, . . . [it]

noted that this rule does not apply to legislation that merely

'alters the prospective effect of injunctions entered by Article

III courts.'" *See Imprisoned Citizens Union*, 169 F.3d at 183

(quoting *Plaut*, 514 U.S. at 232); *see also Benjamin v. Jacobson*,

172 F.3d 144, 161 (2d Cir. 1999), *cert. denied*, 528 U.S. 824

(1999) ("Under the separation of powers, Congress lacks the

authority to alter a finally rendered judgment ordering the

payment of money.  On the other hand, to the extent that a

court's final judgment consists of an injunction, Congress may

*Berne Corp., et al. v. Gov't of the V.I., et al.*
Civil Nos. 2000-141, 2000-167, 2001-151, 2001-155, 2001-181, 2001-196,
2001-197, 2001-228, 2002-057
Memorandum Opinion
Page 21

require alteration or termination of its future effect if the law
on which the injunction was predicated has been changed.").

The decision of the United States Court of Appeals for the
Third Circuit in *Imprisoned Citizens Union v. Ridge*, 169 F.3d 178
(3d Cir. 1999) is instructive.  In that case, the Third Circuit
held that a consent decree was not "impervious to legislative
modification" because, as "a judgment awarding prospective
injunctive relief," it "is necessarily altered every time a
change in law brings [its] terms in conflict with statutory
objectives." *Id.* at 184 (quotation omitted).

Applying the standards outlined above,[11] the Court does not
find that the Repeal Act unconstitutionally reopens a judgment of
this Court.  Rather, that act merely changed the underlying law
that constituted the legal grounds for the May 12, 2003 Decree.
As such, the Plaintiffs cannot enforce a right that the 1936 Act
no longer furnishes.  That result obtains whether the Court's
Decree is through litigation or by consent.

> In either event, a court does not abdicate its power
> to revoke or modify its mandate, if satisfied that

---

[11]  Although *Imprisoned Citizens Union* dealt with a consent
decree, the principles articulated in that and similar decisions
are equally applicable to the May 12, 2003 Decree. *See Halderman
v. Pennhurst State Sch. & Hosp.*, 901 F.2d 311, 318 n.9 (3d Cir.
1990) (citing *Williams v. Vukovich*, 720 F.2d 909, 920 (6th Cir.
1983) ("A consent decree is essentially a settlement agreement
subject to continued judicial policing.")).

*Berne Corp., et al. v. Gov't of the V.I., et al.*
Civil Nos. 2000-141, 2000-167, 2001-151, 2001-155, 2001-181, 2001-196,
2001-197, 2001-228, 2002-057
Memorandum Opinion
Page 22

> what it has been doing has been turned through
> changing circumstances into an instrument of wrong.
> We reject the argument . . . that a decree entered
> upon consent is to be treated as a contract and not
> as a judicial act . . . .

*System Federation No. 91 v. Wright*, 364 U.S. 642, 651, 81 S.Ct.

368, 5 L.Ed.2d 349 (1961) (quoting *United States v. Swift & Co.*,

286 U.S. 106, 114-15, 52 S.Ct. 460, 76 L.Ed. 999 (1932)).

### b.   Prescribing a Rule of Decision

The Plaintiffs rely on the Supreme Court's decision in

*United States v. Klein*, 80 U.S. 128, 20 L.Ed. 519, 13 Wall. 128

(1871), for the proposition that the Repeal Act "constitutes

impermissible legislative interference with the judiciary."

(Pls.' Supp. Mem. in Opp'n 9.)  The Plaintiffs offer little, if

any, explanation of how the principles articulated in *Klein* apply

to the matter before this Court.

In *Klein*, the Supreme Court considered the constitutionality

of a federal statute passed after the Civil War that was intended

to prevent pardoned ex-Confederates from reclaiming seized

property.  The statute provided that a presidential pardon was

conclusive evidence that a pardoned person had been disloyal to

the United States. *Id.* at 143-44.  The statute further stated

that a pardon could not constitute evidence of loyalty in a

lawsuit to reclaim confiscated property from the United States,

and required the Court to dismiss all such lawsuits pending on

*Berne Corp., et al. v. Gov't of the V.I., et al.*
Civil Nos. 2000-141, 2000-167, 2001-151, 2001-155, 2001-181, 2001-196,
2001-197, 2001-228, 2002-057
Memorandum Opinion
Page 23

appeal in which a pardoned person had prevailed. *Id.* at 144.   In

declaring the statute unconstitutional, the Court reasoned that

Congress was in effect prescribing the rule of decision for

pending cases. *Id.* at 147.   That outcome, the Court concluded,

violated the separation-of-powers doctrine. *Id.*

The Plaintiffs' reliance on *Klein* is misplaced.   In

*Biodiversity Assocs. v. Cables*, 357 F.3d 1152 (10th Cir. 2004),

*cert. denied*, 543 U.S. 817 (2004), the United States Court of

Appeals for the Tenth Circuit explained:

> When Congress does not control the substance of a
> right, there are limits to its ability to influence
> the judiciary's determination of that right, either
> by directing the judiciary to decide a particular
> way, or by setting aside judicial determinations
> after the fact.   But when rights are the creatures
> of Congress . . . Congress is free to modify them at
> will, even though its action may dictate results in
> pending cases and terminate prospective relief in
> concluded ones.   Thus, *Klein*'s prohibition on
> prescribing rules of decision in pending cases has
> no application to public rights cases . . . .

*Id.* at 1171.

That position was not new.   Indeed, the Supreme Court

previously had noted:

> [T]he private rights of parties which have been
> vested by the judgment of a court cannot be taken
> away by subsequent legislation, but must be
> thereafter enforced by the court regardless of such
> legislation.
>
> This rule, however, . . . does not apply to a suit
> brought for the enforcement of a public right,

*Berne Corp., et al. v. Gov't of the V.I., et al.*
Civil Nos. 2000-141, 2000-167, 2001-151, 2001-155, 2001-181, 2001-196,
2001-197, 2001-228, 2002-057
Memorandum Opinion
Page 24

> which, even after it has been established by the
> judgment of the court, may be annulled by subsequent
> legislation and should not be thereafter enforced;
> although, in so far as a private right has been
> incidentally established by such judgment, as for
> special damages to the plaintiff or for his costs,
> it may not be thus taken away.

*Hodges v. Snyder*, 261 U.S. 600, 603-04, 43 S.Ct. 435, 67 L.Ed.
819 (1923) (internal citations omitted).

The property tax assessment system in the 1936 Act was a
creation of Congress.  It is properly characterized as a public
right to which *Klein* has no application.

**2.   Contract Clause**

The Plaintiffs also appear to claim that Act 6991 impairs a
contractual right.  According to the Plaintiffs, any tax
legislation codified at Title 33 is void because "[w]hen a state
itself enters into a contract, it cannot simply walk away from
its financial obligations." (Pls.' Mem. In Opp'n 13.)  The
Plaintiffs' argument is unsupported in law and must fail.

The Contract Clause provides that "no State shall . . . pass
any . . . Law impairing the Obligation of Contracts." U.S. Const.
art. I, § 10, cl. 1.  The Contract Clause extends to the Virgin
Islands by virtue of the Revised Organic Act of 1954, 48 U.S.C. §
1561 ("No law impairing the obligation of contracts shall be
enacted."). *See Nieves v. Hess Oil V.I. Corp.*, 819 F.2d 1237,
1243 (3d Cir. 1987).

*Berne Corp., et al. v. Gov't of the V.I., et al.*
Civil Nos. 2000-141, 2000-167, 2001-151, 2001-155, 2001-181, 2001-196,
2001-197, 2001-228, 2002-057
Memorandum Opinion
Page 25

The Berne Settlement is the only contract to which the Government and the Plaintiffs are parties. Significantly, that contract requires that the Government bring its property tax system into compliance with federal law. However, there no longer is any relevant federal law with which the government must comply since the 1936 Act has been repealed. That result was not occasioned by the local government. Rather, it was the result of the Repeal Act. The Plaintiffs' Contract Clause objection, therefore, essentially is a complaint derived from the effect of the Repeal Act.

Any claim to the effect that the Repeal Act itself contravenes the Contract Clause is without merit, as the Contract Clause does not constrain Congress. *See Nieves v. Hess Oil V.I. Corp.*, 819 F.2d 1237, 1251 (3d Cir. 1987) (noting that the Contract Clause "is not applicable to the federal government"), *cert. denied*, 484 U.S. 963 (1987). Consequently, the Court fails to understand how Act 6991 substantially, or even minimally, impairs any contractual right the Plaintiffs purport to possess.

In sum, none of the Plaintiffs' objections to Rule 60(b) relief are convincing. Indeed, given the current legal landscape, the public interest would be best served by relieving the Government of its obligation to comply with the 1936 Act. Accordingly, the Court finds that vacatur of that portion of the

*Berne Corp., et al. v. Gov't of the V.I., et al.*
Civil Nos. 2000-141, 2000-167, 2001-151, 2001-155, 2001-181, 2001-196,
2001-197, 2001-228, 2002-057
Memorandum Opinion
Page 26

May 12, 2003 Decree that requires that real property be assessed in accordance with the 1936 Act is appropriate.  To hold otherwise would effectively require the Government to comply with an Order deprived of its legal mandate.

**B.   The Requirement to Have a Functioning Board of Tax Review**

Although the Court has determined that the reassessment portion of the May 12, 2003 Decree must be vacated, that does not complete the Rule 60(b) inquiry.

In addition to the reassessment requirement, the May 12, 2003 Decree requires that, prior to the issuance of any tax bills that reflect a rate other than the 1998 rate, the Board of Tax Review must (1) consistently hold hearings on appeals, and (2) make timely decisions on those appeals.  The Defendants appear to contend that this requirement in the May 12, 2003 Decree is immaterial to the Court's determination of whether to vacate the May 12, 2003 Decree in its entirety.  The Court disagrees.

A functioning Board of Tax Review was the remedy prescribed for the constitutional due process injury caused by the Government.  Unless and until that remedy was administered, the Defendants were enjoined.  Indeed, the conditions which need to be satisfied prior to obtaining relief from the injunction – reassessment and a functioning Board of Tax Review -- were not disjunctive options.  They were conjunctive mandates.

*Berne Corp., et al. v. Gov't of the V.I., et al.*
Civil Nos. 2000-141, 2000-167, 2001-151, 2001-155, 2001-181, 2001-196,
2001-197, 2001-228, 2002-057
Memorandum Opinion
Page 27

Accordingly, the Court's inquiry would not be complete without reviewing the Defendants' compliance with the second major condition of the May 12, 2003 Decree.

The record in this matter reveals that the Board of Tax Review is functioning to some degree.  However, major aspects of the Board's operations leave the Court with significant doubts about its functioning.  The testimony of Anderson and Challenger shows that taxpayers whose appeals are being decided in 2008 have not been receiving sufficient notice and opportunity to be heard before their appeals come before the Board of Tax Review. Furthermore, while Challenger's affidavit established that six meetings were conducted in 2006 and 2007, it did not state whether a quorum was present at each of those six meetings.  Also missing from Challenger's statement was whether the taxpayer's were afforded notice of these hearings and an opportunity to be heard.  Given the testimony elicited at the evidentiary hearing, it is unlikely that the Board provided such notice in 2006 and 2007, when it failed to do so in 2008.

The record is also devoid of any indication that the Board of Tax Review is able to establish a consistent method of managing its docket so as to provide for the efficient resolution of pending appeals.  For instance, at the July 2, 2008, hearing

*Berne Corp., et al. v. Gov't of the V.I., et al.*
Civil Nos. 2000-141, 2000-167, 2001-151, 2001-155, 2001-181, 2001-196,
2001-197, 2001-228, 2002-057
Memorandum Opinion
Page 28

Challenger was examined about the manner in which the Board

functions:

> Q: And as part of your duties as the director, do
> you, are you the one who selects which cases should
> be heard?
>
> A: Yes.
>
> Q: And how do you make that selection?
>
> A: Sometimes I use the method of the first-come, the
> first-out.
>      The other times if there are other
> circumstances, I might mix them together.

(Hr'g Tr. at --, July 2, 2008.)  Clearly, there is no reliable

and established procedure to determine the order in which appeals

will be heard.

Similarly absent from the record is any evidence to suggest

that the Board of Tax Review is maintaining reliable records.

For example, at the July 2, 2008, hearing, the Defendants'

attorney asked Challenger how he determined the number of appeals

pending before the Board.  Challenger responded:

> A: When an appellant files an appeal they bring a
> piece of paper which is the appeal form and we keep
> the record of that by name.
>
> Q: And how do you determine which, how -- you keep
> that record, is there any other record that you keep
> in your office with respect to the appeals?
>
> A: Yes, we keep what I call a register.

. . .

*Berne Corp., et al. v. Gov't of the V.I., et al.*
Civil Nos. 2000-141, 2000-167, 2001-151, 2001-155, 2001-181, 2001-196,
2001-197, 2001-228, 2002-057
Memorandum Opinion
Page 29

A: The register is recording the appeals and there's a portion of the register that describe the action for those appeals.  And if an appeal is heard, the determination of that appeal should be recorded in the register.

Q: You said should, is it always recorded in the register?

A: No.

     THE COURT: Mr. Challenger, if it's not recorded in the register, how is it that you are aware of the number, how is it accounted for?

THE WITNESS: Go back to the personal file, sir.

                    . . .

THE COURT: All right.  Is there any electronic recording of appeals as they are filed.

THE WITNESS: No, sir.

                    . . .

[PLAINTIFF'S ATTORNEY]: Did you do anything yourself to verify the numbers they reported to you were accurate?

A: What they gave me I checked to see if the numbers they gave me is accurate.

Q: And how did you check that?

A: From the paper that they gave me.

Q: How did you check the numbers that they gave you were accurate based on the paper that they gave you?

A: Counting them.

Q: Did you go back into the files and verify it?

A: No.

*Berne Corp., et al. v. Gov't of the V.I., et al.*
Civil Nos. 2000-141, 2000-167, 2001-151, 2001-155, 2001-181, 2001-196,
2001-197, 2001-228, 2002-057
Memorandum Opinion
Page 30

(*Id.* at --.)  That system appears haphazard and fails to instill
confidence in the Court that the Board of Tax Review has a
reliable system in place to ensure timely consideration of
appeals.

The Government has failed to show any consistency with the
hearings held by the Board.  The Government has also failed to
show that the Board reached decisions on all appeals or that
refunds resulting from the Board decision were remitted within
the required time.  Although authorized by the legislature, no
hearing examiners have been hired.  Even more troubling is the
fact that since January 31, 2007, there have only been two Board
meetings, both of which occurred in 2008.  In sum, the Board's
attempts to comply with the May 12, 2003 Decree have been
sporadic, short-lived, and of recent vintage.

To its credit, the Government has shown that there is a good
faith commitment by certain players to have the Board comply with
the May 12, 2003 Decree.  Given the history of this case,
however, that good faith commitment is not enough.  Indeed, two
hearings held within four-weeks of each other and immediately
before a hearing on the Board's compliance do not indicate
consistency.  Furthermore, the fact that 374 appeals remain

*Berne Corp., et al. v. Gov't of the V.I., et al.*
Civil Nos. 2000-141, 2000-167, 2001-151, 2001-155, 2001-181, 2001-196,
2001-197, 2001-228, 2002-057
Memorandum Opinion
Page 31

pending before the Board does not show that the Board is capable

of making decisions quickly and efficiently.

Accordingly, the Court finds that the Government has failed

to show that the Board of Tax Review is functioning to a degree

where it provides a plain, speedy, and efficient remedy for

challenging property taxes as required by the May 12, 2003

Decree.

## IV. <u>CONCLUSION</u>

For the reasons discussed above, the Court will vacate that

portion of the May 12, 2003 Decree that requires that real

property be assessed in compliance with the 1936 Act.  Because

the current state of the Tax Review Board is deficient, the Court

will deny the Defendants' request with respect to that portion of

the May 12, 2003 Decree that requires a functioning Board of Tax

Review prior to the issuance of tax bills that reflect a rate

other than the 1998 rate.  The Court will continue to monitor the

Board of Tax Review on a quarterly basis to determine whether the

Defendants are in compliance with the May 12, 2003 Decree.

An appropriate Order follows.


                                    S_____
                                       **CURTIS V. GÓMEZ**
                                        **Chief Judge**

FOR PUBLICATION

IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

```
                                    )
BERNE CORP. and B & B CORP.,        )
TWENTY-ONE QUEENS QUARTER, INC.,    )
MILLER PROPERTIES, INC., EQUIVEST   )
ST. THOMAS, INC., ROBERT SCHMIDT,   )
KIM HOLDSWORTH, ROBERT SCHMIDT      )
DEVELOPMENT CORP., and DORI P.      )   Civil Nos. 2000-141
DERR, THE CYRIL V. FRANCOIS         )              2000-167
ASSOCIATES, LLC, SHELL SEEKERS,     )              2001-151
INC., CHARLES W. CONSOLVO, LINDA B. )              2001-155
CONSOLVO, SNEGLE GADE ASSOCIATES    )              2001-181
LP, CHARLES W. CONSOLVO as Trustee  )              2001-196
of the YVETTE B. LEDERBERG TRUST,   )              2001-197
ARTHUR B. CHOATE, STEWART LOVELAND, )              2001-228
and STACY LOVELAND, ELIZABETH       )              2002-057
SHARP, LINDON CORP., GORDON L.      )
COFFELT, SORAYA DIASE COFFELT, and  )
ONE STOP, INC.,                     )
                                    )
             Plaintiffs,            )
                                    )
        v.                          )
                                    )
GOVERNMENT OF THE VIRGIN ISLANDS,   )
ROY MARTIN, in his official         )
capacity as Tax Assessor, and the   )
Board of Tax Review,                )
                                    )
             Defendants.            )
_____)
```

ATTORNEYS:

James M. Derr, Esq.
St. Thomas, U.S.V.I.
          *For plaintiffs Berne Corp., B & B Corp., Miller
          Properties, Inc., Robert Schmidt, Robert Schmidt
          Development Corp., Kim Holdsworth, Dori P. Derr, Shell
          Seekers, Inc., Charles W. Consolvo, Linda B. Consolvo,
          Snegle Gade Associates, LP, Charles W. Consolvo as
          Trustee of the Yvette B. Lederberg Trust, Arthur B.
          Choate, Stewart Loveland, Stacy Loveland, and Elizabeth
          Sharp.*

*Berne Corp., et al. v. Gov't of the Virgin Islands, et al.*
Civil Nos. 2000-141, 2000-167, 2001-151, 2001-155, 2001-181, 2001-196,
2001-197, 2001-228, 2002-057
Order
Page 2

**Chad C. Messier, Esq.**
St. Thomas, U.S.V.I.
        *For plaintiff Equivest St. Thomas, Inc.*

**Soraya Diase-Coffelt, Esq.**
St. Thomas, U.S.V.I.
        *For plaintiffs Lindon Corp., Gordon L. Coffelt, Soraya
        Diase Coffelt, and One Stop, Inc.*

**David A. Bornn, Esq.**
St. Thomas, U.S.V.I.
        *For plaintiffs The Cyril V. Francois Associates, LLC
        and Twenty-One Queens Quarter, Inc.*

**Carol Thomas-Jacobs, Esq.**
St. Thomas, U.S.V.I.
        *For the defendants.*


<u>**ORDER**</u>

**GÓMEZ, C.J.**

        Before the Court is the motion of the defendants, the

Government of the Virgin Islands (the "Government"); Roy Martin,

in his official capacity as Tax Assessor ("Martin"); and the

Board of Tax Review (collectively referred to as the

"Defendants"), to vacate a permanent injunction issued by this

Court on May 12, 2003 (the "May 12, 2003 Decree").

        For the reasons explained in the accompanying Memorandum

Opinion of even date, it is hereby

        **ORDERED** that the motion is **GRANTED** to the extent it seeks

vacatur of the portion of the May 12, 2003 Decree that requires

real property taxes to be assessed in compliance with the 1936

*Berne Corp., et al. v. Gov't of the Virgin Islands, et al.*
Civil Nos. 2000-141, 2000-167, 2001-151, 2001-155, 2001-181, 2001-196,
2001-197, 2001-228, 2002-057
Order
Page 3

Act.  That portion of the May 12, 2003 Decree is **VACATED;** it is

further

    **ORDERED** that the motion is **DENIED** insofar as it seeks

vacatur of the portion of the May 12, 2003 Decree that requires a

functioning Board of Tax Review prior to the issuance of tax

bills that reflect a rate other than the 1998 rate; and it is

further

    **ORDERED** that the Court will continue to monitor the Board of

Tax Review on a quarterly basis to determine whether the

Defendants are in compliance with the May 12, 2003 Decree.


                       S\_____

                           **CURTIS V. GÓMEZ**
                            **Chief Judge**