FOR PUBLICATION

IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

|  |  |  |
|---|---|---|
| BERNE CORP. and B & B CORP., TWENTY-ONE QUEENS QUARTER, INC., MILLER PROPERTIES, INC., EQUIVEST ST. THOMAS, INC., ROBERT SCHMIDT, KIM HOLDSWORTH, ROBERT SCHMIDT DEVELOPMENT CORP., and DORI P. DERR, THE CYRIL V. FRANCOIS ASSOCIATES, LLC, SHELL SEEKERS, INC., CHARLES W. CONSOLVO, LINDA B. CONSOLVO, SNEGLE GADE ASSOCIATES LP, CHARLES W. CONSOLVO as Trustee of the YVETTE B. LEDERBERG TRUST, ARTHUR B. CHOATE, STEWART LOVELAND, and STACY LOVELAND, ELIZABETH SHARP, LINDON CORP., GORDON L. COFFELT, SORAYA DIASE COFFELT, and ONE STOP, INC., | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Civil Nos. 2000-141<br>2000-167<br>2001-151<br>2001-155<br>2001-181<br>2001-196<br>2001-197<br>2001-228<br>2002-057 |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| GOVERNMENT OF THE VIRGIN ISLANDS, ROY MARTIN, in his official capacity as Tax Assessor, and the Board of Tax Review, | ) ) ) ) ) | |
| Defendants. | ) ) | |

ATTORNEYS:

James M. Derr, Esq.
St. Thomas, U.S.V.I.
        *For plaintiffs Berne Corp., B & B Corp., Miller
        Properties, Inc., Robert Schmidt, Robert Schmidt
        Development Corp., Kim Holdsworth, Dori P. Derr, Shell
        Seekers, Inc., Charles W. Consolvo, Linda B. Consolvo,
        Snegle Gade Associates, LP, Charles W. Consolvo as
        Trustee of the Yvette B. Lederberg Trust, Arthur B.
        Choate, Stewart Loveland, Stacy Loveland, and Elizabeth
        Sharp.*

*Berne Corp., et al. v. Gov't of the V.I., et al.*
*Civil Nos. 2000-141, 2000-167, 2001-151, 2001-155, 2001-181, 2001-196,*
*2001-197, 2001-228, 2002-057*
*Memorandum Opinion*
*Page 2*

**Chad C. Messier, Esq.**
St. Thomas, U.S.V.I.
  *For plaintiff Equivest St. Thomas, Inc.*

**Soraya Diase-Coffelt, Esq.**
St. Thomas, U.S.V.I.
  *For plaintiffs Lindon Corp., Gordon L. Coffelt, Soraya*
  *Diase Coffelt, and One Stop, Inc.*

**David A. Bornn, Esq.**
St. Thomas, U.S.V.I.
  *For plaintiffs The Cyril V. Francois Associates, LLC*
  *and Twenty-One Queens Quarter, Inc.*

**Carol Thomas-Jacobs, Esq.**
St. Thomas, U.S.V.I.
  *For the defendants.*

## <u>MEMORANDUM OPINION</u>

**GÓMEZ, C.J.**

  This matter comes before the Court to determine whether the defendants, the Government of the Virgin Islands; Roy Martin, in his official capacity as Tax Assessor ("Martin"); and the Board of Tax Review (the "Board") (collectively, the "Defendants"), should be held in contempt for violating an Order of this Court.

### I. <u>FACTUAL AND PROCEDURAL BACKGROUND</u>

  On May 12, 2003, this Court entered a Decree (the "May 12, 2003 Decree") enforcing a settlement agreement between the various named plaintiffs (the "Plaintiffs") and the Defendants regarding real property taxation in the Virgin Islands. *See Berne*

*Berne Corp., et al. v. Gov't of the V.I., et al.*
Civil Nos. 2000-141, 2000-167, 2001-151, 2001-155, 2001-181, 2001-196,
2001-197, 2001-228, 2002-057
Memorandum Opinion
Page 3

*Corp. v. Gov't of the V.I.*, 262 F. Supp. 2d 540, 575-77 (D.V.I. 2003), *aff'd*, 105 Fed. Appx. 324 (2004) (unpublished).

In the May 12, 2003 Decree, the Court enjoined the Defendants from assessing any and all real property in the Virgin Islands until the Court found that two primary conditions were satisfied. The first such condition was the establishment of a property tax system that reliably and credibly assessed and taxed all real property on its actual value, as required by 48 U.S.C. §§ 1401-1401e (the "1936 Act"). *See id.* at 575. The second such condition required the Board of Tax Review to consistently hold hearings and reach determinations on appeals within sixty days. *See id.* The Court also held that the Government could issue bills based on the assessment values for the 1998 calender year reflected in the 1999 tax bills if it provided a mechanism to adjust the assessments and bills retroactively. Thereafter, the Legislature of the Virgin Islands passed Act No. 6586 ("Act 6586"), which provided for such a mechanism. That act was signed into law on July 14, 2003.

On August 13, 2003, on the Defendants' motion, the Court modified the May 12, 2003 Decree. The Court found that, in light of Act 6586, the Government had "acted sufficiently to provide relief for the Territory's taxpayers and . . . that the Government is entitled to collect revenue from property taxes."

*Berne Corp., et al. v. Gov't of the V.I., et al.*
Civil Nos. 2000-141, 2000-167, 2001-151, 2001-155, 2001-181, 2001-196,
2001-197, 2001-228, 2002-057
Memorandum Opinion
Page 4

*In re Tax Litig.*, 276 F. Supp. 2d 435, 436 (D.V.I. 2003).

Therefore, the Court modified the May 12, 2003, decree with

respect to "all non-plaintiff taxpayers to allow the Government

to issue tax bills based on the 1998 assessments reflected in the

1999 tax bills." *Id.* The Court noted that the decree "shall

remain unmodified and in full effect for all parties to this

litigation." *Id.* Aside from the August 13, 2003, modification,

the May 12, 2003 Decree remains in full force and effect.

On June 29, 2007, Congress repealed the 1936 Act,

retroactive to July 22, 1954 (the "Repeal Act").

On December 5, 2007, the Defendants filed a motion to vacate

the May 12, 2003 Decree. The Court subsequently held several

status conferences and hearings regarding that motion. The Court

received briefs regarding the motion as recently as July 15,

2008. The Court also heard argument relating to the motion as

recently as July 2, 2008.

On March 10, 2008, the Governor of the Virgin Islands signed

into law Act No. 6991 ("Act 6991"). That act repeals several

sections of Title 33 of the Virgin Islands Code, which sets forth

laws governing taxation and finance in the Virgin Islands. Among

other things, the act authorizes Martin to issue real property

tax bills for 2006 during the 2008 fiscal year.

*Berne Corp., et al. v. Gov't of the V.I., et al.*
Civil Nos. 2000-141, 2000-167, 2001-151, 2001-155, 2001-181, 2001-196,
2001-197, 2001-228, 2002-057
Memorandum Opinion
Page 5

On August 19, 2008, the Defendants filed a document with the Court captioned as an "Informative Notice."  In that document, the Defendants stated that the Government "will issue the 2006 property tax bills to property owners."  Thereafter, the Plaintiffs filed a motion for an order to show cause why the Defendants should not be held in contempt for violating the May 12, 2003 Decree.  The Defendants filed an opposition to the Plaintiffs' motion.

The Court held a status conference with the parties on September 3, 2008.  At that status conference, the Defendants indicated that the 2006 property tax bills were issued at rates not based on the 1998 assessments.  Given the Defendants' apparent indication at the status conference that tax bills had been issued in violation of the May 12, 2003 Decree, the Court issued an order requiring the Defendants to show cause why they should not be held in contempt.

A show-cause hearing was held on September 8, 2008.  At that hearing, the Plaintiffs presented the testimony of Roy Martin ("Martin") and Lucille Kirschbaum ("Kirschbaum"), the property

*Berne Corp., et al. v. Gov't of the V.I., et al.*
Civil Nos. 2000-141, 2000-167, 2001-151, 2001-155, 2001-181, 2001-196, 2001-197, 2001-228, 2002-057
Memorandum Opinion
Page 6

manager of the one of the named plaintiffs.[1]  The Defendants

offered no evidence.[2]

## II. <u>DISCUSSION</u>

"A plaintiff must prove three elements by clear and

convincing evidence to establish that a party is liable for civil

contempt: (1) that a valid order of the court existed; (2) that

the defendants had knowledge of the order; and (3) that the

defendants disobeyed the order." *Roe v. Operation Rescue*, 54 F.3d

133, 137 (3d Cir. 1995) (quotation marks and citation omitted).

"The validity of the underlying order is not open to

consideration." *Harris v. City of Philadelphia*, 47 F.3d 1311,

1326 (3d Cir. 1995).  "The resolution of ambiguities ought to

favor the party charged with contempt." *Id.*

"There is general support for the proposition that a

defendant may not be held in contempt as long as it took all

reasonable steps to comply." *Id.* at 1324. (citation omitted).

"However, the burden is that of the defendant to introduce

evidence beyond a mere assertion of inability, and to show that

---

[1]  The Plaintiffs also asked to call the Virgin Islands
Attorney General as a witness.  The Court denied that request.

[2]  The Defendants indicated that the only witness they had
intended to call, was ill and unable to attend.

*Berne Corp., et al. v. Gov't of the V.I., et al.*
Civil Nos. 2000-141, 2000-167, 2001-151, 2001-155, 2001-181, 2001-196,
2001-197, 2001-228, 2002-057
Memorandum Opinion
Page 7

it has made in good faith all reasonable efforts to comply." *Id.*

(quotation marks and citations omitted).

### III. <u>ANALYSIS</u>

The Defendants do not contest the second and third elements
necessary for a contempt finding.  That is, the Defendants
concede that they had knowledge of the May 12, 2003 Decree and
that they have violated that injunction by issuing tax bills at
the 2006 rate.[3]  The Court therefore trains its analysis solely
on the first element necessary for a contempt finding: whether a
valid order of this Court exists.

The Defendants do not seriously dispute that the May 12,
2003 Decree is valid in the sense that it is an order entered by
a judge of this Court acting within his jurisdiction. *Cf. United
States v. Cutler*, 58 F.3d 825, 832 (2d Cir. 1995) ("[T]o invoke
the transparently invalid exception, . . . a defendant must make
some good faith effort to seek emergency relief from the
appellate court . . ., or show compelling circumstances, such as
a need to act immediately, excusing the decision not to seek some
kind of emergency relief.") (internal citations omitted).

---

[3]  At the show-cause hearing, Martin testified that he knew
about the May 12, 2003 Decree and states in general terms the
effects of the injunction, including the requirement that the
Government not issue tax bills at a rate other than the 1998
assessment.  Martin further testified that the Government has
issued tax bills at the 2006 rate.

*Berne Corp., et al. v. Gov't of the V.I., et al.*
Civil Nos. 2000-141, 2000-167, 2001-151, 2001-155, 2001-181, 2001-196,
2001-197, 2001-228, 2002-057
Memorandum Opinion
Page 8

Indeed, the Defendants concede that they have complied with the

May 12, 2003 Decree since its issuance approximately five years

ago.

Rather, the Defendants primarily contend that the May 12,

2003 Decree is invalid: (1) because Congress repealed the 1936

Act, and (2) because this Court lacks jurisdiction over this

matter pursuant to 28 U.S.C. § 1341 (the "Tax Injunction Act").

The Defendants' argument that Repeal of the 1936 Act

invalidates the May 12, 2003 Decree is unavailing.  As the

Supreme Court has explained:

> It would be a disservice to the law if we were to
> depart from the long-standing rule that a contempt
> proceeding does not open to reconsideration the
> legal or factual basis of the order alleged to have
> been disobeyed and thus become a retrial of the
> original controversy.  The procedure to enforce a
> court's order commanding or forbidding an act should
> not be so inclusive as to foster experimentation
> with disobedience.

*United States v. Rylander*, 460 U.S. 752, 756-57, 103 S.Ct. 1548,

75 L.Ed.2d 521 (1983) (quoting *Maggio v. Zeitz*, 333 U.S. 56, 69,

68 S.Ct. 401, 92 L.Ed. 476 (1948)); *see also, e.g., Cutler*, 58

F.3d at 832 ("[A] party may not challenge a district court's

order by violating it.  Instead, he must move to vacate or modify

the order, or seek relief in this Court.  If he fails to do

either, ignores the order, and is held in contempt, he may not

*Berne Corp., et al. v. Gov't of the V.I., et al.*
Civil Nos. 2000-141, 2000-167, 2001-151, 2001-155, 2001-181, 2001-196,
2001-197, 2001-228, 2002-057
Memorandum Opinion
Page 9

challenge the order unless it was transparently invalid or

exceeded the district court's jurisdiction.").

The Plaintiffs' argument that the Tax Injunction Act

deprives this Court of jurisdiction similarly fails.  The Tax

Injunction Act deprives federal district courts of jurisdiction

to "enjoin, suspend or restrain the assessment, levy or

collection of any tax under State law where a plain, speedy and

efficient remedy may be had in the courts of such State." 28

U.S.C. § 1341 (1940).  Prior to the Repeal Act, it could not

reasonably be questioned that the Tax Injunction Act did not

apply to the Virgin Islands. *See Bluebeard's Castle, Inc. v.

Gov't of the V.I.,* 321 F.3d 394, 397 n.5 (3d Cir. Feb. 28, 2003);

*Pan Am. World Airways, Inc. v. Gov't of the V.I.,* 459 F.2d 387

(3d Cir. 1972).

In *Pan Am. World Airways, Inc. v. Gov't of the V.I.,* 459

F.2d 387 (3d Cir. 1972), the Third Circuit  held that the Tax

Injunction Act does not apply to the Virgin Islands. *Id.* at 391.

The court explained:

> Under the judiciary subchapter of the Organic Act,
> however, the District Court of the Virgin Islands
> has both federal question jurisdiction and general
> original jurisdiction in all other causes in the
> Virgin Islands except in those cases where Congress
> has placed exclusive jurisdiction elsewhere. 48
> U.S.C. § 1612. There is no indication that Congress
> intended that the district court, in the exercise of
> either its federal question jurisdiction or its

*Berne Corp., et al. v. Gov't of the V.I., et al.*
Civil Nos. 2000-141, 2000-167, 2001-151, 2001-155, 2001-181, 2001-196,
2001-197, 2001-228, 2002-057
Memorandum Opinion
Page 10

> original Virgin Islands jurisdiction should be
> subject to the strictures of 28 U.S.C. § 1341.
> Indeed no such notions of federalism as underlie
> limitations on the power of the federal district
> courts to enjoin certain state actions are
> applicable to the territories.

*Id.*

The Third Circuit again addressed the applicability of the
Tax Injunction Act to the territory in *Bluebeard's Castle, Inc.
v. Gov't of the V.I.,* 321 F.3d 394 (3d Cir. 2003). In that case,
the Third Circuit acknowledged that "[w]ere it a state, the
District Court may have been subject to the prohibition on tax
injunctions under the Tax Injunction Act," and that "[w]here
applicable, the Tax Injunction Act implicates federal
subject-matter jurisdiction." *Bluebeard's Castle, Inc. v. Gov't
of the V.I.,* 321 F.3d at 397 n.5. The *Bluebeard's* court then
concluded that "the Tax Injunction Act does not apply to the
Virgin Islands." *Id.*

The Government correctly points out that Congress removed a
significant federal element of the Virgin Islands tax regime when
it repealed the 1936 Act. Even so, the Virgin Islands remains a
territory, and as such is still subject to Congress' broad power
under Article IV, section 3, clause 2 of the constitution. *Cf.
Pan Am. World Airways, Inc.,* 459 F.2d at 397 (explaining that
"the right of Congress to revise, alter and revoke these

*Berne Corp., et al. v. Gov't of the V.I., et al.*
Civil Nos. 2000-141, 2000-167, 2001-151, 2001-155, 2001-181, 2001-196,
2001-197, 2001-228, 2002-057
Memorandum Opinion
Page 11

delegated powers does not diminish the powers while they reside
in the territory"). Indeed, in its two decisions where the
application of the Tax Injunction Act in the Virgin Islands was
discussed, the Third Circuit's holdings did not turn on the
existence of the 1936 Act. Rather, the court's holdings were
based on the Virgin Islands' status as a territory as opposed to
a state.

Even assuming that the Tax Injunction Act applies to the
Virgin Islands as a consequence of the Repeal Act, it would not
affect the Court's power to enjoin the Government from issuing
tax bills. Indeed, the plain language of the Tax Injunction Act
makes clear that in order for the prohibition on injunctions to
apply, there must be a plain, speedy and efficient state remedy
for those challenging their taxes. In 2003, this Court found
that the Virgin Islands Board of Tax Review does not function at
a level that provides taxpayers in the Virgin Islands a plain,
speedy, and efficient territorial remedy for challenging their
property taxes. *See Berne Corp. v. Gov't of the V.I.*, 262 F.
Supp. 2d 540, 566-67 (D.V.I. 2003). That conclusion has not
changed. Accordingly, the Tax Injunction Act does deprive this
Court of jurisdiction over property tax matters. *See Gass v.
County of Allegheny, PA.*, 371 F.3d 134, 137 (3d Cir. 2004) ("The
Tax Injunction Act divests federal courts of jurisdiction only if

*Berne Corp., et al. v. Gov't of the V.I., et al.*
Civil Nos. 2000-141, 2000-167, 2001-151, 2001-155, 2001-181, 2001-196,
2001-197, 2001-228, 2002-057
Memorandum Opinion
Page 12

the state fails to provide a 'plain, speedy and efficient' remedy
in its court.").

Moreover, while the repeal of the 1936 Act arguably could
affect the validity of future claims regarding purely local tax
issues, that was not the type of claim on which the Court ruled
in the May 12, 2003 Decree.  The jurisdictional basis for that
ruling cannot be retroactively rescinded to invalidate that
Decree. *See Miller v. French*, 530 U.S. 327, 344, 120 S.Ct. 2246,
147 L.Ed.2d 326 (2000) ("[B]ecause Article III gives the Federal
Judiciary the power, not merely to rule on cases, but to decide
them, subject to review only by superior courts in the Article
III hierarchy, the judicial Power is one to render dispositive
judgments, and Congress cannot retroactively command Article III
courts to reopen final judgments.").

Having disposed of the challenges to the validity of the May
12, 2003 Decree, the Court will now focus on whether the
Government's conduct in violation of that order was contemptuous.
The Third Circuit's en banc decision in *Halderman v. Pennhurst
State Sch. & Hosp.*, 673 F.2d 628 (3d Cir. 1982) (en banc), *cert.
denied*, 465 U.S. 1038 (1984), is instructive on this point.

*Halderman* involved a class action proceeding by persons
suffering mental retardation against various agencies and
officials of the Commonwealth of Pennsylvania.  After a trial,

*Berne Corp., et al. v. Gov't of the V.I., et al.*
Civil Nos. 2000-141, 2000-167, 2001-151, 2001-155, 2001-181, 2001-196,
2001-197, 2001-228, 2002-057
Memorandum Opinion
Page 13

the district court found that the Commonwealth had violated
Pennsylvania and federal law, and issued a permanent injunction
to ensure suitable living conditions for the plaintiffs.  The
injunction also provided for the appointment of a Special Master
to supervise implementation of the injunction and for the
Commonwealth to supply funding to the Special Master.  The
Commonwealth appealed, arguing that (1) the injunction's
prospective relief required the expenditure of Commonwealth
funds, and (2) the appointment of a Special Master was improper.
The Third Circuit rejected those arguments and affirmed the
district court's order in large part.  The Supreme Court granted
certiorari.

        During the pendency of the appeal before the Supreme Court,
an official with the Department of Public Welfare of the
Commonwealth "conceived the idea of separating out from the
general appropriation for State Centers for the Mentally Retarded
a distinct appropriation for the operation of the Masters'
offices." *Halderman*, 673 F.2d at 632.  The Department secretary
also decided "to depart from the prior practice, and was
successful in having a separate item for the Masters' offices
included in the Governor's budget requests." *Id.*  In testimony
before the legislature, the secretary expressed objections to the

*Berne Corp., et al. v. Gov't of the V.I., et al.*
Civil Nos. 2000-141, 2000-167, 2001-151, 2001-155, 2001-181, 2001-196,
2001-197, 2001-228, 2002-057
Memorandum Opinion
Page 14

funding of the Special Master.[4]  At the secretary's suggestion,

the legislature appropriated, as a line item appropriation,

$35,000 for the Special Master, adding: "It is the intent of the

General Assembly that this appropriation be used for shutdown

costs and that no other funds of the Commonwealth be spent for

th[e] function[] [of the Special Master]." *Id.* at 633.

Thereafter, the governor signed the appropriation bill into law,

apparently on the assumption that the Supreme Court would rule in

the Commonwealth's favor and find that there should be no Special

Master.  The Commonwealth did not seek relief under Rule 60(b) of

the Federal Rules of Civil Procedure.

After the appropriation bill became law, the Commonwealth

informed the district court that it would no longer pay the

Special Master's expenses, and ordered its comptroller to

withhold payment.  Officials at the Department of Public Welfare

also took the position that they would not obey the district

court's order, and advised the court of that fact.

On learning of this development, the plaintiffs filed a

motion in district court for the Commonwealth to show cause why

it should not be held in contempt.  At a hearing, the

---

[4]  In hearings before the legislature, the secretary stated
that he was willing to go to jail for violating the court's
order.

*Berne Corp., et al. v. Gov't of the V.I., et al.*
Civil Nos. 2000-141, 2000-167, 2001-151, 2001-155, 2001-181, 2001-196,
2001-197, 2001-228, 2002-057
Memorandum Opinion
Page 15

Commonwealth stated that it did not contest the validity of the

district court's order.  The Commonwealth argued that it was

proceeding in good faith, and that it was prevented from obeying

the court's order due to the appropriation bill.  The district

court thereafter held the Commonwealth[5] in contempt and ordered

the Commonwealth, among other things, to pay into the court

registry $10,000 per day for each day that full payment was not

made pursuant to the court's injunction.  The Commonwealth

appealed.

On appeal, the Commonwealth conceded that it had disobeyed

the district court's order and that it had knowledge of that

order.  The Commonwealth also conceded that the order was valid.

However, the Commonwealth argued that it was bound by the

Pennsylvania law containing the Pennsylvania legislature's

mandate to disobey the district court's order.

The Third Circuit found the Commonwealth's argument

unpersuasive, observing that

> [a]t the time the [Commonwealth] made the deliberate
> and considered choice to advise the Court that it
> intended to disobey the [district court's] payment
> order it was open to th[e] defendant[] to move
> before the District Court under Rule 60(b)(5) or (6)

---

[5]   Specifically, the district court's order targeted the
Secretary of the Department of Public Welfare of the Commonwealth
and the the Department of Public Welfare of the Commonwealth
itself.

*Berne Corp., et al. v. Gov't of the V.I., et al.*
Civil Nos. 2000-141, 2000-167, 2001-151, 2001-155, 2001-181, 2001-196,
2001-197, 2001-228, 2002-057
Memorandum Opinion
Page 16

> for relief . . . on the ground that the action of
> the Pennsylvania legislature justified relieving the
> Commonwealth from the obligation there imposed.

*Id.*  The court noted that if the Commonwealth had made such a motion and the district court denied it, the Commonwealth could have immediately appealed.  The court also observed, in a passage that bears particular resonance in this matter:

> [B]y resorting to self-help in a situation where a
> post-judgment change in the law is arguably a reason
> for relief from the judgment, a party subject to
> that judgment deprives the other side of the notice
> and opportunity to be heard which Rule 60(b) would
> otherwise require, and of the protection of the
> provision in that rule. . . . The rule contemplates
> consideration by the trial court of the competing
> equities, of the strengths and weaknesses of the
> parties' positions, and of the imposition of
> conditions for relief from a judgment. . . . The
> self-help route leaves the trial court with no
> alternative except restoration of the status quo
> ante bellum by a coercive contempt order.

*Id.*  Finally, the Third Circuit noted, in affirming the district court's contempt finding, that "[a]ny other holding would be an open invitation to any party subject to an injunction to resort to self-help whenever in its view some change in the law warranted relief from a judgment." *Id.* at 638.

Here, as in *Halderman*, all the earmarks of contemptuous conduct appear to be present.  There is a valid Order of this Court.  The Defendants had knowledge of the Order.  In spite of that knowledge, the Defendants elected to violate the Order.

*Berne Corp., et al. v. Gov't of the V.I., et al.*
Civil Nos. 2000-141, 2000-167, 2001-151, 2001-155, 2001-181, 2001-196,
2001-197, 2001-228, 2002-057
Memorandum Opinion
Page 17

Nonetheless, the Defendants argue that their conduct is not contemptuous because compliance with the May 12, 2003 Decree is impossible.  In essence, the Defendants argue that they cannot be held in contempt for issuing tax bills in compliance with a legislative directive –– Act 6991.  That argument in unconvincing for several reasons.

First, "where the contemnor participated in effectuating the change in the law which is alleged to establish a legal impossibility, sound policy does not permit the by-passing of the orderly route to appellate review provided by Rule 60(b)."  *Halderman,* 672 F.2d at 639.  The impossibility to which the Government refers is a condition of its own making and is singularly unconvincing.  Indeed, it is precisely the type of legal impossibility defense that is disfavored and proscribed by *Halderman*.

The legislative history of Act 6991 clearly indicates that Act 6991 was a creation of the executive.  In a transmittal letter from the Governor to the Senate President, the Governor not only explained the need and effect of the proposed legislation, but called the legislature into special session to ensure urgent passage of the executive proposal.  The Governor directed that, "[g]iven the importance of real property taxes to the budget of the Government, and the significance to the

*Berne Corp., et al. v. Gov't of the V.I., et al.*
Civil Nos. 2000-141, 2000-167, 2001-151, 2001-155, 2001-181, 2001-196,
2001-197, 2001-228, 2002-057
Memorandum Opinion
Page 18

Government of properly administering its own real property tax system, this matter is of the utmost priority." (Letter of John P DeJongh, Governor of the Virgin Islands 1, Feb. 5, 2008.)  The consequent bill introduced by the Senate President bears the telltale indicator of its origin: "RECOMMENDED BY: THE GOVERNOR." (Bill No. 27-165 at 1.)

From the show-cause hearing, the Court has before it clear and convincing evidence that the Government was aware of the May 12, 2003 Decree and understood its reach.  Accordingly, to the extent the Defendants caused Act 6991's promulgation with full knowledge of the May 12, 2003 Decree, the Court finds the Defendants' impossibility argument wanting.

Second, Act 6991 does not speak in mandatory terms.  That is, the plain language of that act nowhere compels the Defendants to issue 2006 tax bills.  Rather, Act 6991 requires that real property in the Virgin Islands be assessed at 100 percent of its fair market value.  At most, Act 6991 provides that the Tax Assessor "may issue real property tax bills for the year 2006 during the Fiscal Year 2008."  That language is permissive. Indeed, operating within similar language, the Tax Assessor has in the past not issued tax bills in certain years.  In sum, there is simply no requirement in Act 6991 that the Defendants issue the 2006 tax bills.  The decision to issue such bills was solely

*Berne Corp., et al. v. Gov't of the V.I., et al.*
Civil Nos. 2000-141, 2000-167, 2001-151, 2001-155, 2001-181, 2001-196,
2001-197, 2001-228, 2002-057
Memorandum Opinion
Page 19

within the discretion of the executive.  Accordingly, the

executive bears sole responsibility for that decision.

Third, the Defendants have adduced absolutely no evidence to

show that they have made any effort, let alone all reasonable

efforts, to comply with the May 12, 2003 Decree, at least since

the passage of Act 6991. *Cf. Harris v. City of Philadelphia*, 47

F.3d 1311, 1326 (3d Cir. 1995) (affirming the district court's

finding of contempt against the defendant because the defendant

failed to take all reasonable steps to comply with the underlying

consent decree).  Indeed, the Defendants' claim that their hands

are tied by that act is belied by the Defendants' previous

conduct in these proceedings.  As noted earlier, little more than

one month after the issuance of the May 12, 2003, decree, the

Legislature of the Virgin Islands passed Act 6586.  That act

acknowledged that "[t]he Virgin Islands is experiencing a severe

fiscal crisis that threatens the financial stability of the

Government and its institutions," and therefore provided a

stopgap mechanism to allow the territory to collect property

taxes pending resolution of these proceedings.

Now, again, the Defendants assert their need to collect such

taxes but furnish no explanation why a similar, *or any other*,

stopgap measure is not now available.  In sum, the Defendants

have fallen far short of their burden of establishing

*Berne Corp., et al. v. Gov't of the V.I., et al.*
Civil Nos. 2000-141, 2000-167, 2001-151, 2001-155, 2001-181, 2001-196,
2001-197, 2001-228, 2002-057
Memorandum Opinion
Page 20

impossibility of compliance with the May 12, 2003 Decree. *Cf.*

*Philadelphia Welfare Rights Org. v. Shapp*, 602 F.2d 1114 (3d Cir.

1979) (affirming the district court's modification of a consent

decree based on its finding that despite the good faith efforts

of the City of Philadelphia, performance was not possible where

circumstances had gone beyond the parties' contemplation and

defendant's control), *cert. denied*, 444 U.S. 1026 (1980).

The Defendants also urge that their years-long compliance

with the May 12, 2003 Decree and their recent attempts to have

that injunction vacated, disfavor a finding of contempt.   In

essence, the Defendants highlight their general good faith during

the pendency of these proceedings.   However, "[w]illfulness is

not a necessary element of civil contempt, and, accordingly,

evidence regarding good faith does not bar the conclusion that

the defendant acted in contempt." *John T. ex rel. Paul T. v.*

*Delaware County Intermediate Unit*, 318 F.3d 545, 552 (3d Cir.

2003) (alterations, quotation marks and citation omitted).   As a

consequence, the Court finds the Defendants' argument in this

vein unavailing.

Finally, the Defendants cite *Berne Corp. v. Gov't of the*

*V.I.,* 105 Fed. Appx. 324 (3d Cir. June 28, 2004) (unpublished),

as authority for the proposition that they cannot be held in

contempt for sending out 2006 tax bills to non-plaintiffs.   In

*Berne Corp., et al. v. Gov't of the V.I., et al.*
Civil Nos. 2000-141, 2000-167, 2001-151, 2001-155, 2001-181, 2001-196,
2001-197, 2001-228, 2002-057
Memorandum Opinion
Page 21

that appeal, the Government argued that the Plaintiffs lacked

standing to sue on behalf of non-plaintiffs under title 5,

section 80 of the Virgin Islands Code ("Section 80"). *Id.* at 329.

The Third Circuit dismissed the appeal of that issue, explaining

that it "essentially has been mooted by the District Court's

order of August 13, 2003 lifting the May 2003 injunction as to

all non-plaintiff real property taxpayers to allow the V.I.

Government to issue tax bills to them based on the 1998

assessments reflected in the 1999 tax bills." *Id.*

Assuming, *arguendo*, that the issuance of 2006 tax bills to

non-plaintiffs does not constitute a violation of the May 12,

2003 Decree, the evidence still supports a finding of contempt.

Kirschbaum's testimony at the September 8, 2008, hearing

indicated that the Government sent a 2006 tax bill to Twenty-One

Queens Quarter, one of the Plaintiffs in this matter, in direct

violation of the May 12, 2003 Decree.  The Defendants clearly

violated the May 12, 2003 Decree by issuing 2006 tax bills to at

least one of the Plaintiffs in this matter.

## IV. <u>CONCLUSION</u>

The Court is sympathetic to the fiscal considerations that

may be guiding the Defendants in issuing tax bills.  While

*Berne Corp., et al. v. Gov't of the V.I., et al.*
Civil Nos. 2000-141, 2000-167, 2001-151, 2001-155, 2001-181, 2001-196,
2001-197, 2001-228, 2002-057
Memorandum Opinion
Page 22

Property taxes are but one source of revenue for the Government,[6] it is beyond peradventure that any government would prefer to maximize each source of funding.  To that end, the rule of law is a significant component in securing that funding.  Indeed, the Government appropriately expects its citizens to comply with all of its laws, including the payment of taxes, failing which they risk severe legal consequences.

The obligation to abide by the rule of law is not limited to the citizenry, however.  That obligation is shared with the Government.  Neither the governed nor those who govern may decide when and if the rule of law is applicable.  If that were the case, the rule of law would be meaningless as the decision to obey a court order would be subject to the whims of one party to litigation – here, an officer of a governmental entity.  The Supreme Court has never countenanced such an arrangement. Indeed, in *Young v. United States*, 481 U.S. 787, 107 S.Ct. 2124, 95 L.Ed.2d 740, (1987), the Court recognized that

> [i]f a party can make himself a judge of the validity of orders which have been issued, and by his own act of disobedience set them aside, then are the courts impotent, and what the Constitution now fittingly calls the judicial power of the United States would be a mere mockery.

---

  [6]  The Virgin Islands has several other avenues through which it may raise revenues, including income, corporate, and gross receipts taxes.

*Berne Corp., et al. v. Gov't of the V.I., et al.*
Civil Nos. 2000-141, 2000-167, 2001-151, 2001-155, 2001-181, 2001-196,
2001-197, 2001-228, 2002-057
Memorandum Opinion
Page 23

*Id.*

Where that circumstance has occurred, the Supreme Court has also recognized the need to sanction such conduct:

> The ability to punish disobedience to judicial orders is regarded as essential to ensuring that the Judiciary has a means to vindicate its own authority without complete dependence on other Branches.

*Id.* at 796.  That is precisely the unfortunate circumstance that presents itself here.  The facts surrounding the Government's issuance of the 2006 tax bills provide this Court with clear and convincing evidence that the Defendants have violated the May 12, 2003 Decree and are therefore in contempt.  The Court finds that a sanction that will coerce the Government into compliance with this Court's Order and compensate the Plaintiffs losses sustained as a result of the Government's conduct is appropriate.

The remedy which the Court prescribes is not entered lightly.  The Court is cognizant of the fiscal concerns of the Government.  At the same time, however, the Court is mindful that the legislative Gordian knot about which the executive complains and which it argues ties its hands and compels issuance of tax bills was made possible by the rope and knot-tying instructions supplied by the executive.  In essence, the Government has created a situation of peril and now seeks to benefit from it. In the face of a standing court order, both the Government's

*Berne Corp., et al. v. Gov't of the V.I., et al.*
Civil Nos. 2000-141, 2000-167, 2001-151, 2001-155, 2001-181, 2001-196,
2001-197, 2001-228, 2002-057
Memorandum Opinion
Page 24

conduct and the argument advanced to support it are not only

unfortunate, but also troubling.

For the reasons stated above, the motion to hold the

Government in contempt for violating the May 12, 2003 Decree will

be granted.  The Court finds that an appropriate sanction for

that contempt is: (1) rescission of all 2006 tax bills issued at

a rate other than that prescribed in the May 12, 2003 Decree; (2)

payment of a per diem fine of $5,000 from the date of this Order

until the Defendants demonstrate to this Court that they have

made significant efforts to comply with the terms of this Order;

(3) reimbursement for reasonable attorneys' fees and costs

incurred by the Plaintiffs in litigating the contempt issue; and

(4) creation of a fund into which property tax revenue shall be

paid to be used to satisfy the payment obligations imposed by

this Court.

An appropriate Order follows.

S\_____

**CURTIS V. GÓMEZ**
**Chief Judge**

FOR PUBLICATION

IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

|  |  |  |
|---|---|---|
| BERNE CORP. and B & B CORP., TWENTY-ONE QUEENS QUARTER, INC., MILLER PROPERTIES, INC., EQUIVEST ST. THOMAS, INC., ROBERT SCHMIDT, KIM HOLDSWORTH, ROBERT SCHMIDT DEVELOPMENT CORP., and DORI P. DERR, THE CYRIL V. FRANCOIS ASSOCIATES, LLC, SHELL SEEKERS, INC., CHARLES W. CONSOLVO, LINDA B. CONSOLVO, SNEGLE GADE ASSOCIATES LP, CHARLES W. CONSOLVO as Trustee of the YVETTE B. LEDERBERG TRUST, ARTHUR B. CHOATE, STEWART LOVELAND, and STACY LOVELAND, ELIZABETH SHARP, LINDON CORP., GORDON L. COFFELT, SORAYA DIASE COFFELT, and ONE STOP, INC., | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Civil Nos. 2000-141<br>2000-167<br>2001-151<br>2001-155<br>2001-181<br>2001-196<br>2001-197<br>2001-228<br>2002-057 |
| Plaintiffs, | ) ) ) |  |
| v. | ) ) |  |
| GOVERNMENT OF THE VIRGIN ISLANDS, ROY MARTIN, in his official capacity as Tax Assessor, and the Board of Tax Review, | ) ) ) ) ) |  |
| Defendants. | ) ) ) |  |

ATTORNEYS:

James M. Derr, Esq.
St. Thomas, U.S.V.I.
        *For plaintiffs Berne Corp., B & B Corp., Miller
        Properties, Inc., Robert Schmidt, Robert Schmidt
        Development Corp., Kim Holdsworth, Dori P. Derr, Shell
        Seekers, Inc., Charles W. Consolvo, Linda B. Consolvo,
        Snegle Gade Associates, LP, Charles W. Consolvo as
        Trustee of the Yvette B. Lederberg Trust, Arthur B.
        Choate, Stewart Loveland, Stacy Loveland, and Elizabeth
        Sharp.*

*Berne Corp., et al. v. Gov't of the V.I., et al.*
Civil Nos. 2000-141, 2000-167, 2001-151, 2001-155, 2001-181, 2001-196,
2001-197, 2001-228, 2002-057
Order
Page 2

**Chad C. Messier, Esq.**
St. Thomas, U.S.V.I.
        *For plaintiff Equivest St. Thomas, Inc.*

**Soraya Diase-Coffelt, Esq.**
St. Thomas, U.S.V.I.
        *For plaintiffs Lindon Corp., Gordon L. Coffelt, Soraya
        Diase Coffelt, and One Stop, Inc.*

**David A. Bornn, Esq.**
St. Thomas, U.S.V.I.
        *For plaintiffs The Cyril V. Francois Associates, LLC
        and Twenty-One Queens Quarter, Inc.*

**Carol Thomas-Jacobs, Esq.**
St. Thomas, U.S.V.I.
        *For the defendants.*

<u>**ORDER**</u>

**GÓMEZ, C.J.**

     This matter comes before the Court to determine whether the
defendants, the Government of the Virgin Islands; Roy Martin, in
his official capacity as Tax Assessor ("Martin"); and the Board
of Tax Review (the "Board") (collectively, the "Defendants"),
should be held in contempt for violating an Order of this Court.
For the reasons stated in the accompanying Memorandum Opinion of
even date, it is hereby

     **ORDERED** that the Defendants shall rescind all 2006 tax bills
issued at a rate other than that prescribed in the May 12, 2003
Decree; it is further

*Berne Corp., et al. v. Gov't of the V.I., et al.*
Civil Nos. 2000-141, 2000-167, 2001-151, 2001-155, 2001-181, 2001-196,
2001-197, 2001-228, 2002-057
Order
Page 3

**ORDERED** that the Defendants shall pay into the registry of
the Court a per diem fine of $5,000 from the date of this Order
until the Defendants demonstrate to this Court that they have
made significant efforts to comply with the terms of this Order;
it is further

**ORDERED** that the Plaintiffs shall be entitled to such
attorneys' fees and costs as the Court deems appropriate; and it
is further

**ORDERED** that the Commissioner of Finance shall establish a
special fund, titled the "Property Tax Contempt Expense Fund"
(the "Fund"), in a separate interest bearing bank account at a
bank authorized to do business in the Territory of the Virgin
Islands.  The Fund and its bank account shall be funded from
property tax revenues up to $100,000, and the payments into the
Fund will go toward satisfaction of any payment obligations
imposed by the Court in connection with this matter.  If
additional monies are needed to fund the Government's payment
obligations, then the Government shall ensure that all such
additional funds are made available and deposited into the Fund.

*Berne Corp., et al. v. Gov't of the V.I., et al.*
Civil Nos. 2000-141, 2000-167, 2001-151, 2001-155, 2001-181, 2001-196,
2001-197, 2001-228, 2002-057
Order
Page 4

All monies in the Fund shall be used solely and exclusively to

pay the obligations imposed by this Court's Orders.[1]


S_____
    **CURTIS V. GÓMEZ**
       **Chief Judge**

---

[1] Should the Defendants wish at any time to demonstrate
that they have come into compliance with the May 12, 2003 Decree,
the Defendants may request a hearing to make such showing.