**FOR PUBLICATION**

```
           IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
                 DIVISION OF ST. THOMAS AND ST. JOHN
```

|  |  |
|---|---|
| BERNE CORP. and B & B CORP., TWENTY-ONE QUEENS QUARTER, INC., MILLER PROPERTIES, INC., EQUIVEST ST. THOMAS, INC., ROBERT SCHMIDT, KIM HOLDSWORTH, ROBERT SCHMIDT DEVELOPMENT CORP., and DORI P. DERR, THE CYRIL V. FRANCOIS ASSOCIATES, LLC, SHELL SEEKERS, INC., CHARLES W. CONSOLVO, LINDA B. CONSOLVO, SNEGLE GADE ASSOCIATES LP, CHARLES W. CONSOLVO as Trustee of the YVETTE B. LEDERBERG TRUST, ARTHUR B. CHOATE, STEWART LOVELAND, and STACY LOVELAND, ELIZABETH SHARP, LINDON CORP., GORDON L. COFFELT, SORAYA DIASE COFFELT, and ONE STOP, INC.,<br><br>        Plaintiffs,<br><br>        v.<br><br>GOVERNMENT OF THE VIRGIN ISLANDS, ROY MARTIN, in his official capacity as Tax Assessor, and the Board of Tax Review,<br><br>        Defendants. | Civil Nos. 2000-141<br>2000-167<br>2001-151<br>2001-155<br>2001-181<br>2001-196<br>2001-197<br>2001-228<br>2002-057 |

**ATTORNEYS:**

**James M. Derr, Esq.**
St. Thomas, U.S.V.I.
>   *For plaintiffs Berne Corp., B & B Corp., Miller Properties, Inc., Robert Schmidt, Robert Schmidt Development Corp., Kim Holdsworth, Dori P. Derr, Shell Seekers, Inc., Charles W. Consolvo, Linda B. Consolvo, Snegle Gade Associates, LP, Charles W. Consolvo as Trustee of the Yvette B. Lederberg Trust, Arthur B. Choate, Stewart Loveland, Stacy Loveland, and Elizabeth Sharp.*

*Berne Corp., et al. v. Government of the Virgin Islands, et al.*
Civil Nos. 2000-141, 2000-167, 2001-151, 2001-155, 2001-181, 2001-196, 2001-197, 2001-228, 2002-057
Memorandum Opinion
Page 2

**Chad C. Messier, Esq.**
St. Thomas, U.S.V.I.
    *For plaintiff Equivest St. Thomas, Inc.*

**Soraya Diase-Coffelt, Esq.**
St. Thomas, U.S.V.I.
    *For plaintiffs Lindon Corp., Gordon L. Coffelt, Soraya Diase Coffelt, and One Stop, Inc.*

**David A. Bornn, Esq.**
St. Thomas, U.S.V.I.
    *For plaintiffs The Cyril V. Francois Associates, LLC and Twenty-One Queens Quarter, Inc.*

**Carol Thomas-Jacobs, Esq.**
St. Thomas, U.S.V.I.
    *For the defendants.*

## MEMORANDUM OPINION

**GÓMEZ, C.J.**

Before the Court is the emergency motion of the defendants, the Government of the Virgin Islands (the "Government"); Roy Martin, in his official capacity as Tax Assessor ("Martin"); and the Board of Tax Review (collectively referred to as the "Defendants"), for a stay pending appeal.

### I. FACTUAL AND PROCEDURAL BACKGROUND

The Court has set forth the facts of these consolidated cases in other rulings and therefore recites only those facts that are pertinent to its analysis in resolving this motion.

On May 12, 2003, this Court entered a decree (the "May 12,

*Berne Corp., et al. v. Government of the Virgin Islands, et al.*
Civil Nos. 2000-141, 2000-167, 2001-151, 2001-155, 2001-181, 2001-196, 2001-197, 2001-228, 2002-057
Memorandum Opinion
Page 3

2003 Decree") prohibiting the Defendants from issuing property tax bills until (1) a reliable and credible real property tax assessment scheme was put in place, as contemplated by 48 U.S.C. §§ 1401-1401e (the "1936 Act"), and (2) a Board of Tax Review functioned at a level that did not offend the due process clause of the Constitution.  On August 13, 2003, the Court modified the May 12, 2003 Decree to allow the issuance of property tax bills at the 1998 rates.

On June 29, 2007, Congress repealed the 1936 Act, retroactive to July 22, 1954 (the "Repeal Act").  On December 5, 2007, the Defendants filed a motion to vacate the May 12, 2003 Decree.

On March 10, 2008, the Governor of the Virgin Islands signed into law Act No. 6991 ("Act 6991"), which, among other things, authorized the issuance of property tax bills at 2006 rates for the 2008 fiscal year.

On August 19, 2008, although the Court had not yet ruled on the Defendants' motion to vacate the May 12, 2003 Decree, the Defendants notified the Court that the 2008 property tax bills had been issued.  At a subsequent status conference, the Court learned that those tax bills had been issued at the 2006 rates.  The Court thereafter held a show-cause hearing to determine whether the Defendants should be held in contempt for violating

*Berne Corp., et al. v. Government of the Virgin Islands, et al.*
Civil Nos. 2000-141, 2000-167, 2001-151, 2001-155, 2001-181, 2001-196, 2001-197, 2001-228, 2002-057
Memorandum Opinion
Page 4

the May 12, 2003 Decree.

On September 11, 2008, the Court issued two rulings in this long-running litigation. In the first ruling (the "Partial Vacatur Ruling"), the Court partially granted and partially denied the Defendants' motion to vacate the May 12, 2003 Decree. The Court concluded that the May 12, 2003 Decree could no longer be enforced to the extent it was predicated on the 1936 Act, but declined to lift the injunction to the extent it rested on ongoing due process violations. *See Berne Corp. v. Gov't of the Virgin Islands, et al.*, Civ. Nos. 2000-141, *et al.*, 2008 U.S. Dist. LEXIS 69247 (D.V.I. Sept. 11, 2008).

In the second ruling (the "Contempt Ruling"), the Court found by clear and convincing evidence that the Defendants had violated the May 12, 2003 Decree by issuing property tax bills at a rate other than that prescribed in that order. Accordingly, the Court held the Defendants in contempt. To coerce compliance with the May 12, 2003 Decree, the Court: (1) ordered the Defendants to rescind all 2006 tax bills issued at a rate not prescribed by the May 12, 2003 Decree; (2) imposed on the Defendants a per diem fine of $5,000, to be paid into the Court's registry, until the Defendants make significant efforts to comply with the May 12, 2003 Decree; (3) found that the named plaintiffs in these cases (the "Plaintiffs") are entitled to an award of

*Berne Corp., et al. v. Government of the Virgin Islands, et al.*
Civil Nos. 2000-141, 2000-167, 2001-151, 2001-155, 2001-181, 2001-196, 2001-197, 2001-228, 2002-057
Memorandum Opinion
Page 5

appropriate attorneys' fees and costs; and (4) ordered the Commissioner of Finance to establish a special fund and separate bank account, to be funded from property tax revenues up to $100,000, to be used to satisfy any payment obligations imposed by the Court in connection with this matter. *See Berne Corp. v. Gov't of the Virgin Islands, et al.*, Civ. Nos. 2000-141, *et al.*, 2008 U.S. Dist. LEXIS 69246 (D.V.I. Sept. 11, 2008).

On September 12, 2008, the Defendants filed a notice of appeal of both the Partial Vacatur Ruling and the Contempt Ruling.  On that same day, the Defendants filed the instant emergency motion to stay both of those rulings pending appeal.

## II. **DISCUSSION**

To determine whether to issue a stay pending appeal under Rule 62 of the Federal Rules of Civil Procedure, the Court must assess: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987) (citations omitted); *see also Republic of Philippines v. Westinghouse Elec. Corp.*, 949 F.2d 653, 658 (3d Cir. 1991).  "[T]he traditional stay factors contemplate individualized judgments in each case."

*Berne Corp., et al. v. Government of the Virgin Islands, et al.*
Civil Nos. 2000-141, 2000-167, 2001-151, 2001-155, 2001-181, 2001-196, 2001-197, 2001-228, 2002-057
Memorandum Opinion
Page 6

*Hilton*, 481 U.S. at 777. "Where the latter three factors favor a stay, [an applicant] need only demonstrate a substantial case on the merits to warrant issuance of a stay under Rule 62(d)." *Bank of Nova Scotia v. Pemberton*, 964 F. Supp. 189, 190 (D.V.I. 1997) (quotation marks and citation omitted).

A stay pending appeal has been described as an extraordinary remedy. *See United States v. Cianfrani*, 573 F.2d 835, 846 (3d Cir. 1978); *Adams v. Walker*, 488 F.2d 1064, 1065 (7th Cir. 1973) (citing *Belcher v. Birmingham Trust National Bank*, 395 F.2d 685, 686 (5th Cir. 1968)).

### III. ANALYSIS

The Third Circuit has explained that

> [t]he purpose of a stay-pending-appeal is to relieve the losing party of *the burden of changing his behavior unnecessarily*. When a lower court issues a stay pending appeal, it recognizes the possibility that its ruling on the merits may be incorrect. If indeed the lower court's determination is incorrect, it may force a losing party to expend substantial and unrecoverable amounts of money for no reason at all.

*Atlantic Coast Demolition & Recycling v. Board of Chosen Freeholders*, 112 F.3d 652, 669 (3d Cir. 1997) (emphasis supplied).

Here, the Partial Vacatur Ruling keeps the May 12, 2003 Decree in force but imposes no affirmative obligation on the Defendants. The Defendants' several arguments, however, appear

*Berne Corp., et al. v. Government of the Virgin Islands, et al.*
Civil Nos. 2000-141, 2000-167, 2001-151, 2001-155, 2001-181, 2001-196, 2001-197, 2001-228, 2002-057
Memorandum Opinion
Page 7

to challenge the foundation of the Partial Vacatur Ruling.  In raising those arguments, the Defendants essentially seek reconsideration of the Partial Vacatur Ruling.  Such relief, however, must be sought pursuant to Rule 60 of the Federal Rules of Civil Procedure and Rule 7.3 of the Local Rules of Civil Procedure.  The Defendants have not sought relief pursuant to those rules.  Furthermore, the Partial Vacatur Ruling does not require the Defendants to change their conduct in any manner.  As a consequence, the Court will address the stay factors only with respect to the Contempt Ruling.[1]

    **A.**    **Success on the Merits**

The Defendants assert several grounds to show that they are likely to succeed on the merits.  First, the Defendants contend that the Partial Vacatur Ruling and the Contempt Ruling are inconsistent.  To demonstrate that purported inconsistency, the

---

[1] For instance, the Defendants argue that the Partial Vacatur Ruling: (1) violates the separation-of-powers doctrine; (2) compels the Defendants to enforce repealed laws and to ignore valid laws; and (3) is overbroad.

Whatever the merits of those arguments, as noted above, they are improperly asserted in a motion for a stay pending appeal. Furthermore, in raising those arguments, the Defendants gloss over the fact, as they appear to have done throughout these proceedings, that the May 12, 2003 Decree contemplated the satisfaction of two conditions before the Defendants could issue property tax bills at a rate other than that set by the May 12, 2003 Decree.

*Berne Corp., et al. v. Government of the Virgin Islands, et al.*
Civil Nos. 2000-141, 2000-167, 2001-151, 2001-155, 2001-181, 2001-196, 2001-197, 2001-228, 2002-057
Memorandum Opinion
Page 8

Defendants first point to the Court's determination in the Partial Vacatur Ruling that Congress' valid retroactive repeal of the 1936 Act relieves the Defendants of their obligation to comply with the 1936 Act under the May 12, 2003 Decree. The Defendants juxtapose that determination with the Court's finding in the Contempt Ruling that the Repeal Act does not relieve the Defendants of their obligation to comply with the May 12, 2003 Decree.

The Defendants are correct in their characterizations of the Court's essential respective findings in the Partial Vacatur Ruling and the Contempt Ruling. The Defendants miss the mark, however, in describing those rulings as inconsistent. As the Court noted in the Partial Vacatur Ruling, the May 12, 2003 Decree requires that two primary conditions be satisfied before the Defendants may issue property tax bills at non-1998 rates:

> The first condition was the establishment of a property tax system that reliably and credibly assessed and taxed all real property based on its actual value. The second condition required the Government to demonstrate to the Court's satisfaction that it has a functioning Board of Tax Review that consistently holds hearings and reaches determinations on appeals within sixty days.

*Berne Corp.*, 2008 U.S. Dist. LEXIS 69247, at *6 (citations omitted).

The May 12, 2003 Decree and the Court's explanation above

*Berne Corp., et al. v. Government of the Virgin Islands, et al.*
Civil Nos. 2000-141, 2000-167, 2001-151, 2001-155, 2001-181, 2001-196, 2001-197, 2001-228, 2002-057
Memorandum Opinion
Page 9

speak with unequivocal clarity. *Two* conditions, not one, had to be met in order for the Defendants to issue property tax bills at non-1998 rates. The Court expressly found in the Partial Vacatur Ruling that one of those conditions -- the functionality of the Board of Tax Review -- had not been met. That is, the Court determined that the due process violations on which the May 12, 2003 Decree partially rested, have not been remedied. Consequently, the Court finds the Defendants' inconsistency argument unpersuasive because no such inconsistency exists.[2]

The Defendants next assert that the Court erred in relying on the Third Circuit's en banc decision in *Halderman v. Pennhurst State Sch. & Hosp.*, 673 F.2d 628 (3d Cir. 1982) (en banc), *cert. denied*, 465 U.S. 1038 (1984). According to the Defendants, the

---

[2] The Defendants additionally argue that the Partial Vacatur Ruling and the Contempt Ruling are "unclear." Specifically, the Defendants contend that while the Partial Vacatur Ruling relieves the Defendants of any obligations under the May 12, 2003 Decree premised on the 1936 Act, that ruling nevertheless requires the Defendants to continue issuing property tax bills pursuant to the May 12, 2003 Decree. That contention is inaccurate. Nowhere in the Partial Vacatur Ruling, or in any other ruling, has the Court ordered the Defendants to issue property tax bills at 1998 rates or, for that matter, at any other rate. The May 12, 2003 Decree merely *permits* the issuance of property tax bills at the 1998 rates and prohibits the issuance of such bills at any other rate. There is simply no support in the record for the Defendants' claim that the Court has "ordered" the issuance of property tax bills. In essence, the purported lack of clarity of which the Defendants complain is little more than a repackaged serving of the inconsistency argument the Court has already addressed and rejected.

*Berne Corp., et al. v. Government of the Virgin Islands, et al.*
Civil Nos. 2000-141, 2000-167, 2001-151, 2001-155, 2001-181, 2001-196, 2001-197, 2001-228, 2002-057
Memorandum Opinion
Page 10

injunction in *Halderman* was based on violations of constitutionally sound federal and state laws.  The Defendants further argue that there was no intervening change in the laws on which the *Halderman* injunction was based after the injunction was issued.  The Defendants endeavor to distinguish *Halderman* from this matter by reference to Congress' repeal of the 1936 Act.  The Defendants characterize the 1936 Act as "the basis for the jurisdiction for" the May 12, 2003 Decree. (Defs.' Emergency Mot. to Stay Orders Pending Appeal 8.)

As the Court made clear in the May 12, 2003 Decree, the Partial Vacatur Ruling and the Contempt Ruling, and now reiterates, the May 12, 2003 Decree and this Court's jurisdiction rest not only on the 1936 Act but on the due process clause of the Constitution.  It is beyond discussion that here, as in *Halderman*, there has been no intervening change in law that purports to alter the Constitution.  As such, the Defendants' efforts to distinguish *Halderman* from this matter are unavailing.[3]

---

[3] The Defendants also rely on the Supreme Court's decisions in *Pennsylvania v. Wheeling & Belmont Bridge Co.*, 13 HOW 518 (1852) (*Wheeling Bridge I*) and *Pennsylvania v. Wheeling & Belmont Bridge Co.*, 18 HOW 421 (1856) (*Wheeling Bridge II*).

In *Wheeling Bridge I*, the Supreme Court held that a bridge had been erected unlawfully because it was too low, and ordered the bridge to be removed. 13 HOW at 578.  Congress subsequently

*Berne Corp., et al. v. Government of the Virgin Islands, et al.*
Civil Nos. 2000-141, 2000-167, 2001-151, 2001-155, 2001-181, 2001-196, 2001-197, 2001-228, 2002-057
Memorandum Opinion
Page 11

In the Contempt Ruling, the Court explained that "[a] plaintiff must prove three elements by clear and convincing evidence to establish that a party is liable for civil contempt: (1) that a valid order of the court existed; (2) that the defendants had knowledge of the order; and (3) that the defendants disobeyed the order." *Roe v. Operation Rescue*, 54 F.3d 133, 137 (3d Cir. 1995) (quotation marks and citation omitted).

Here, it is undisputed that the Defendants knew of and understood their obligations pursuant to the May 12, 2003 Decree. There is likewise no dispute that the Defendants violated the May 12, 2003 Decree by issuing property tax bills at non-1998 rates.

---

promulgated legislation declaring the bridge to be a "lawful structure," and authorized the bridge at its then-current height. *Wheeling Bridge II*, 18 HOW at 429. Subsequently, the Supreme Court held that because the intervening legislation amended the underlying law, the Court's earlier decree could not be enforced. *See Wheeling Bridge II*, 18 HOW at 431-432. The Court further declined to hold the bridge builders in contempt in light of its conclusion that their actions were not illegal.

The Defendants' contention that *Wheeling Bridge II* is "factually analogous" to this matter is inaccurate. *Wheeling Bridge II* was decided more than 150 years ago, well before the enactment of the Federal Rules of Civil Procedure and Rule 60(b) relief. Now, there is a procedural mechanism for obtaining relief where a party believes a judgment is in conflict with the law. The Defendants' reliance on *Wheeling Bridge II* is also misplaced because the intervening change in law in that case legalized the bridge builders' actions. In this matter, in contrast, one of the bases for the May 12, 2003 Decree was the due process clause of the Constitution. There has been no intervening change to the constitutional basis for the Court's order.

*Berne Corp., et al. v. Government of the Virgin Islands, et al.*
Civil Nos. 2000-141, 2000-167, 2001-151, 2001-155, 2001-181, 2001-196, 2001-197, 2001-228, 2002-057
Memorandum Opinion
Page 12

The only dispute is the validity of the May 12, 2003 Decree.

In the Contempt Ruling, the Court disposed of the Defendants' attack on the validity of the May 12, 2003 Decree by reasoning that the Repeal Act did not invalidate the May 12, 2003 Decree and that the Tax Injunction Act, 28 U.S.C. § 1341, does not deprive this Court of jurisdiction. In their motion for a stay pending appeal, the Defendants fail to address, much less demonstrate any error in, the Court's reasoning in arriving at those conclusions.

In short, the Defendants have fallen short of their burden of making a strong showing that they will succeed on the merits of their appeal of the Contempt Ruling. *See*, *e.g.*, *Ariz. Contrs. Ass'n v. Napolitano*, Civ. Nos. 07-1355, 07-1684, 2007 U.S. Dist. LEXIS 96194, at *50 (D. Ariz. Dec. 21, 2007) (finding that the plaintiffs "have not met their burden of showing a strong likelihood of success"); *767 Third Ave. Assoc. v. Permanent Mission of Republic of Zaire*, 787 F. Supp. 389, 395 (S.D.N.Y. 1992) (similar).

Accordingly, the Court finds that this factor disfavors a stay.

**B.   Irreparable Injury to the Movant**

The Defendants restrict their discussion of irreparable

*Berne Corp., et al. v. Government of the Virgin Islands, et al.*
Civil Nos. 2000-141, 2000-167, 2001-151, 2001-155, 2001-181, 2001-196, 2001-197, 2001-228, 2002-057
Memorandum Opinion
Page 13

injury to the effects of the Partial Vacatur Ruling.[4] Significantly, that discussion is inapposite to the extent that the Partial Vacatur Ruling requires no change in the Defendants' behavior. To the extent the Defendants' argument is intended to apply to the Contempt Ruling, that argument is not convincing.

The exclusive affirmative duties the Contempt Ruling imposes on the Defendants beyond those which are required by the May 12, 2003 Decree, are: (1) the rescission of all 2006 tax bills issued at a rate other than that prescribed in the May 12, 2003 Decree; (2) the payment of a $5,000 per diem fine into the Court's registry until the Defendants make substantial efforts to comply with the May 12, 2003 Decree; and (3) the establishment of a special fund to be used for payment obligations imposed by the Court in connection with this matter.

On May 12, 2003, the Court found a constitutional due process violation in the Virgin Islands property taxation system. The remedy imposed for that constitutional injury to the taxpayers of the Virgin Islands was the establishment of a functioning Board of Tax Review *before* taxpayers could be saddled with new tax obligations for which they could obtain no speedy

---

[4] Specifically, the Defendants claim that they will suffer irreparable injury absent a stay because of their supposed inability to collect property tax revenues.

*Berne Corp., et al. v. Government of the Virgin Islands, et al.*
Civil Nos. 2000-141, 2000-167, 2001-151, 2001-155, 2001-181, 2001-196, 2001-197, 2001-228, 2002-057
Memorandum Opinion
Page 14

relief. Given those circumstances, the Court would undertake an exercise in illogic if it were to conclude now that the government will be injured unless it is allowed to issue new property tax bills under conditions that have been found to injure taxpayers.

Faced with similar circumstances in 2003, the executive obtained a different result. The Court did not tread on the prerogative of the first branch of government. Rather, exercising its independent authority, the Legislature of the Virgin Islands responded with deference to the May 12, 2003 Decree, and with great dispatch to meet the needs of government. Indeed, in the wake of the May 12, 2003 Decree, the Legislature passed new legislation allowing for the issuance of tax bills at the 1998 rates. Immediately on the heels of that new legislation, the Court modified the May 12, 2003 Decree, which allowed the government to issue property tax bills at the 1998 rates. Given the ongoing constitutional due process injury to the taxpayers and the history of this case, it is hard to perceive any irreparable injury that may flow from the rescission of the 2006 tax bills.

Similarly, none of the monetary obligations imposed by the Contempt Ruling will result in irreparable injury to the Defendants. If the Defendants prevail in their appeal, the total

*Berne Corp., et al. v. Government of the Virgin Islands, et al.*
Civil Nos. 2000-141, 2000-167, 2001-151, 2001-155, 2001-181, 2001-196, 2001-197, 2001-228, 2002-057
Memorandum Opinion
Page 15

amount of fines paid into the Court's registry can be returned to the Defendants. Likewise, the Defendants will be able to reallocate any sums, plus interest, deposited into the special fund if they win on appeal.

In short, if the Defendants succeed on the merits of their appeal, the status quo as it existed after the May 12, 2003 Decree and before the Contempt Ruling, is susceptible to complete restoration. Accordingly, the Court concludes that this factor weighs against the issuance of a stay.

## C.   Substantial Injury to Other Parties

Not surprisingly, the Defendants have elected not to highlight any injury the Plaintiffs might suffer if the Court issues a stay.[5]  The Court perceives no substantial injury to the

---

[5]  The Defendants argue that Virgin Islands taxpayers at large will suffer irreparable injury absent a stay. According to the Defendants, some Virgin Islands taxpayers are being "punished" by the Court's decision not to vacate the May 12, 2003 Decree because Act 6991 actually imposes lower property tax rates on certain taxpayers than Act 6991's predecessor statute. In addition to the fact that this argument is again an inappropriately-asserted challenge to the Partial Vacatur Ruling, it is also highly speculative.

First, it can hardly be said with any certainty that taxpayers whose property tax bills are lower by virtue of Act 6991 will suffer substantial injury. The Defendants have been collecting property taxes at the 1998 rates for five years. It is not inconceivable that many taxpayers in the territory who paid their bills during those five years may have been paying more than they would have paid if they had been assessed at the 2003 rates and beyond. Such taxpayers may have paid more in

*Berne Corp., et al. v. Government of the Virgin Islands, et al.*
Civil Nos. 2000-141, 2000-167, 2001-151, 2001-155, 2001-181, 2001-196, 2001-197, 2001-228, 2002-057
Memorandum Opinion
Page 16

Plaintiffs, or the non-named plaintiffs, if a stay is issued.

Accordingly, the Court finds that this factor does not weigh in favor of the issuance of a stay.

**D.   Public Interest**

The Defendants claim that a stay will serve the public interest by permitting the issuance of tax bills, the collection of revenues and the provision of services to the public.  That argument is belied by several factors.  First, the Court does not dispute the need to collect revenues.  Indeed, in the Contempt Ruling, the Court voiced its sympathy with the Defendants' fiscal

---

property taxes over those several years than they would have absent the May 12, 2003 Decree.  The Court rejects any claim that paying higher property taxes as a result of a court-ordered reassessment scheme constitutes substantial injury for stay-pending-appeal purposes.

Second, any injury to taxpayers whose 2006 property tax bills are lower than their 1998 bills, is mitigated by the significant likelihood that the 2006 tax bills of just as many, if not more, taxpayers could be greater than their 1998 bills.

In sum, the plethora of possible outcomes resulting from the Court's rulings demonstrates that the injury of which the Defendants complain is far too speculative to justify a stay pending appeal. *See, e.g.*, *Wisconsin Gas Co. v. Federal Energy Regulatory Com.*, 758 F.2d 669, 672 (D.C. Cir. 1985) ("Petitioners have made allegations of irreparable injury which are speculative, unsubstantiated and of a nature which clearly does not warrant the issuance of a stay."); *Phoenix Global Ventures, LLC v. Phoenix Hotel Assocs.*, No. 04-4991, 2004 U.S. Dist. LEXIS 24079, at *8 (S.D.N.Y. Nov. 29, 2004) (noting that a party seeking a stay bears a "difficult burden" and that to constitute "irreparable injury," the harm must be "imminent or certain, not merely speculative").

*Berne Corp., et al. v. Government of the Virgin Islands, et al.*
Civil Nos. 2000-141, 2000-167, 2001-151, 2001-155, 2001-181, 2001-196, 2001-197, 2001-228, 2002-057
Memorandum Opinion
Page 17

concerns. The Court also noted, however, the various other means by which the Defendants may currently collect revenues, including via income, corporate and gross receipts taxes. The Defendants do not contend -- nor could they -- that property taxes are the only source of government revenue.[6]

Second, the May 12, 2003 Decree is inextricably intertwined with the public interest. Indeed, its injunctive life is extinguished when the government satisfies its constitutional due process obligations to the taxpayers of the Virgin Islands.

Finally, it is undisputed that the Defendants were aware that the Court's imprimatur was required before tax bills could be issued at a rate other than the 1998 rates. Indeed, in open court, the Defendants recognized the need for a court ruling on a pending motion before they could determine how to proceed with the issuance of tax bills:

> *Well the government filed [the Rule 60(b)] motion to obtain relief from this court*, it was also to obtain relief not only under this statute but to seek equitable relief if that's the case. Because in, the because the government had a need to issue its property tax bills. *And we don't know how soon that will be, when that will be or what position the Court, and we were hoping that we would get some guidance so that we*

---

[6] Indeed, the Defendants have collected property taxes at the 1998 rates for approximately five years. The Defendants do not allege, nor is there evidence before the Court to demonstrate, that the territory has suffered irreparable injury over the course of those five years.

*Berne Corp., et al. v. Government of the Virgin Islands, et al.*
Civil Nos. 2000-141, 2000-167, 2001-151, 2001-155, 2001-181, 2001-196, 2001-197, 2001-228, 2002-057
Memorandum Opinion
Page 18

> *can make a determination as how to approach this situation.*

(Unofficial Hr'g Tr., May 16, 2008) (emphasis supplied).[7]

Of even greater concern is a letter from the Governor of the Virgin Islands to the Senate President regarding Act 6991. In that letter, the executive thanked the Legislature for its action and acknowledged that there was yet another necessary step to achieve the objective of issuing and collecting property tax bills at a new rate:

> With the Legislature's final action on this matter, *we now need to take the last step* to complete this journey and begin the issuance and collection of the real property taxes that are necessary to the provision of the services the Government provides.

(Letter of John P. DeJongh, Jr., Governor of the Virgin Islands 3, Mar. 10, 2008) (emphasis supplied). The executive also unambiguously recognized that this Court was the next forum in which this still-pending matter needed to be resolved:

> My Administration will now move forward towards addressing this matter, *which remains pending before the District Court*, to finally accomplish our mutual

---

[7] The Defendants have indicated elsewhere in these proceedings their understanding that the Court suggested that property tax bills could be issued at non-1998 rates even without relief from the Court. That understanding is misguided. The Court has never made any such suggestion. Nor could the Court do so, since a suggestion of that sort would effectively be an advisory opinion. *See Preiser v. Newkirk*, 422 U.S. 395, 401 (1975) ("[A] federal court [does not have] the power to render advisory opinions . . . .") (quotation omitted).

*Berne Corp., et al. v. Government of the Virgin Islands, et al.*
Civil Nos. 2000-141, 2000-167, 2001-151, 2001-155, 2001-181, 2001-196, 2001-197, 2001-228, 2002-057
Memorandum Opinion
Page 19

goal.

(*Id.*) (emphasis supplied).  Notwithstanding this knowledge, the Defendants opted to forge ahead, apparently undeterred by the strictures of the May 12, 2003 Decree and the consequences that might flow from any contravention of that order.

The Court finds that the public interest disfavors such deliberate contumacy by the very government that expects compliance with its laws. *See United States v. Sumitomo Marine & Fire Ins. Co.*, 617 F.2d 1365, 1370 (9th Cir. 1980) ("The effectiveness of and need for harsh measures is particularly evident when the disobedient party is the government."); *Perry v. Golub*, 74 F.R.D. 360, 366 (N.D. Ala. 1976) ("(T)he public interest requires not only that Court orders be obeyed but further that Governmental agencies which are charged with the enforcement of laws should set the example of compliance with Court orders.").

## IV. CONCLUSION

In requesting a stay of both the Partial Vacatur Ruling and the Contempt Ruling, the Defendants do not seek to maintain the status quo that exists as a result of the May 12, 2003 Decree. Rather, the Defendants seek to erect a new status quo, the cornerstone of which is the knowing violation of this Court's order.  In essence, the status quo would be redefined to mean the

*Berne Corp., et al. v. Government of the Virgin Islands, et al.*
Civil Nos. 2000-141, 2000-167, 2001-151, 2001-155, 2001-181, 2001-196, 2001-197, 2001-228, 2002-057
Memorandum Opinion
Page 20

latest development as designed by a litigant.  The Court has found no support in law for such a construction.  Accordingly, the Defendants' motion for a stay pending appeal will be denied.  An appropriate order follows.

                                    S_____
                                       **CURTIS V. GÓMEZ**
                                         **Chief Judge**