FOR PUBLICATION

DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS

Berne Corp. and B & B Corp., )
Twenty-one Queens Quarter, )
Inc., Miller Properties, Inc.,)
Equivest St. Thomas, Inc., )
Robert Schmidt, Kim )
Holdsworth, Robert Schmidt )
Development Corp., and Dori P.)
Derr, The Cyril V. Francois )
Associates, LLC, Shell )
Seekers, Inc., Charles W. )
Consolvo, Linda B. )
Consolvo, Snegle Gade )
Associates LP, Charles W. )
Consolvo as Trustee of the )
Yvette B. Lederberg Trust, )
Arthur B. Choate, Stewart )
Loveland, and Stacy )
Loveland, Elizabeth Sharp, )
Lindon Corp., Gordon L. )
Coffelt, Soraya Diase Coffelt,)
and One Stop, Inc., )
 )
            Plaintiff, )
 )
        v. )
 )
GOVERNMENT OF THE VIRGIN )
ISLANDS, BERNADETTE WILLIAMS, )
in her official capacity as )
Tax Assessor, and the Board of)
Tax Review, )
 )
            Defendants. )
_____)

Civil Nos.    2000-141
              2000-167
              2001-151
              2001-155
              2001-181
              2001-196
              2001-197
              2001-228
              2002-057

ATTORNEYS:

James M. Derr, Esq.
St. Thomas, U.S.V.I.
         *For the plaintiffs Berne Corp., B & B Corp., Miller
         Properties, Inc., Robert Schmidt, Robert Schmidt*

> *Development Corp., Kim Holdsworth, Dori P. Derr, and Elizabeth Sharp.*

**Chad C. Messier, Esq.**
St. Thomas, U.S.V.I.
> *For plaintiff Equivest St. Thomas, Inc.*

**Soraya Diase-Coffelt, Esq.**
St. Thomas, U.S.V.I.
> *For plaintiffs Lindon Corp., Gordon L. Coffelt, Soraya Diase Coffelt, and One Stop, Inc.*

**David A. Bornn, Esq.**
St. Thomas, U.S.V.I.
> *For plaintiffs The Cyril V. Francois Associates, LLC and Twenty-One Queen Quarter, Inc.*

**Carol Thomas-Jacobs, Esq.**
St. Thomas, U.S.V.I.
> *For the defendants.*

## MEMORANDUM OPINION

**GÓMEZ, C.J.**

Before the Court is the motion of the defendants, the Government of the Virgin Islands (the "Government"); Bernadette Williams[1], in her official capacity as Tax Assessor ("Williams"); and the Board of Tax Review (the "Board") (collectively referred

---

[1] Federal Rule of Civil Procedure 25(d) ("Rule 25(d)") provides that, "[a]n action does not abate when a public officer who is a party in an official capacity dies, resigns or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party." Bernadette Williams has assumed the position of Tax Assessor and succeeds former Tax Assessor, Roy Martin. Pursuant to Rule 25(d) she is substituted in Martin's place as a party to this action.

to as the "Defendants"), to lift or modify a permanent injunction issued by this Court, enjoining the collection of real property taxes at rates above those for the 1998 calendar year, and to dismiss these actions. The Defendants seek relief pursuant to Rule 60(b) of the Federal Rules of Civil Procedure ("Rule 60(b)").

## I. FACTUAL AND PROCEDURAL BACKGROUND

This action was initiated by owners of commercial real estate in the Virgin Islands subject to commercial real property taxes assessed by the Government of the Virgin Islands. Plaintiffs alleged violations of 48 U.S.C. § 1401 (repealed 2007)("the 1936 act"), which mandated that real estate tax assessments for the territories be at "actual value." They also alleged violations of the Revised Organic Act of 1954, 48 U.S.C. § 1541, and infringements of their procedural and substantive due process rights under the Fourteenth Amendment of the United States Constitution. The Court preliminarily enjoined the Government and tax assessor Roy Martin ("Martin") from assessing and collecting commercial property taxes in violation of the 1936 Act.

Following the Court's ruling, the parties negotiated a settlement (the "Berne Settlement"), which the District Court approved on December 19, 2000. The Government agreed to implement

a new real property tax assessment system pursuant to the Berne
Settlement.

On May 12, 2003, the Court found that the Defendants had
materially breached the Berne Settlement and ordered that it be
specifically performed. *Berne Corp. v. Gov't of the V.I. (Berne
II)*, 262 F. Supp. 2d. 540, 575 (D.V.I. 2003). Moreover, the Court
issued a decree ("the May 12, 2003 Decree") enjoining the
Defendants from requiring the payment of real property tax bills.

The Court required two primary conditions be met before the
Government could assess real property and issue tax bills. The
first condition was the establishment of a property tax system
that reliably and credibly assessed and taxed all real property
based on its actual value. *Id*. The second condition was the
requirement that the Government demonstrate to the Court's
satisfaction that it has a functioning Board of Tax Review that
consistently holds hearings and makes determinations on appeals.
*Id.*

The Court made the injunction of the assessment and
collection of tax bills applicable to all real property taxpayers
in the Virgin Islands. *Id.* at 572. However, the Court held that
the Government could issue bills to non-party taxpayers based on
the assessment values for the 1998 calendar year reflected in the
1999 tax bills if it provided a mechanism to adjust the

assessments and bills retroactively. *Id.* Thereafter, the

Legislature of the Virgin Islands passed Act No. 6586 ("Act

6586") which provided such a mechanism. It authorized the Tax

Assessor to issue tax bills and collect taxes at the 1998

assessment level for all classes of real property for the tax

years 1999, 2000, 2001, 2002, 2003 and 2004 before a fully

compliant tax system was instituted. Act 6586 also provided that

the tax due would be subject to adjustment for each year once a

new tax system was implemented. Accordingly, in August 2003, the

Court modified the May 2003 Decree to allow the Government to

collect property taxes based on the 1998 assessment levels. *In re*

*Tax Litig.*, 276 F. Supp. 2d 435, 436 (D.V.I. 2003).

On June 29, 2007, Congress repealed the 1936 Act. Congress

made the repeal retroactive to July 22, 1954. In response to the

repeal, the Defendants filed a motion to vacate the May 2003

Decree. Before this Court ruled on the status of the May 2003

injunction, on March 10, 2008, the Governor of the Virgin Islands

signed into law Act No. 6991 ("Act 6991").

Act 6991 amends or repeals several sections of Title 33 of

the Virgin Islands Code, which sets forth the laws governing

taxation and finance in the territory. Among other things, the

act authorized Martin to issue real property tax bills for the

year 2006 during the 2008 fiscal year. In accordance with Act

6991, the Government issued real property tax bills for 2006.

After a hearing, the Court issued an Order on September 11, 2008, finding the Government in contempt of the May 12, 2003 Decree for its issuance of the 2006 tax bills in violation of the requirements of the injunction. On that same day, the Court also ordered vacatur of the part of the May 12, 2003 Decree that relied upon the 1936 Act but retained jurisdiction over the rest of the May 12, 2003 Decree, which ordered reform of the Board of Tax Review.

The Government challenged the Court's jurisdiction and its contempt Order. The Third Circuit affirmed this Court's Orders finding the Government in contempt of the May 12, 2003 Decree, and vacating the part of the Decree that relied upon the 1936 act. Commenting on the Board of Tax Review, the Third Circuit noted that, "we agree with the District Court's application of fact to law—that the Board of Tax Review's functionality did not meet constitutionally required due process standards." *Berne Corp. v. Gov't of the V.I.*, 570 F.3d 130, 139 (3d Cir. 2009). The Government now moves to vacate or modify the Court's May 12, 2003 Decree and Order enjoining the collection of real property taxes at rates above the 1998 assessments. In hearings held on September 17, 2009 and October 15, 2009, the parties presented evidence about the functioning of the Board of Tax Review.

## II. <u>DISCUSSION</u>

Rule 60(b) of the Federal Rules of Civil Procedure provides, in pertinent part:

> On motion and just terms, the court may relieve a party
> or its legal representative from a final judgment,
> order, or proceeding for the following reasons:
> . . . .
> (5) the judgment has been satisfied, released, or
> discharged; it is based on an earlier judgment that has
> been reversed or vacated; or applying it prospectively
> is no longer equitable; or
> (6) any other reason that justifies relief.

FED. R. CIV. P. 60(b)(5). A Rule 60(b)(5) motion may be granted "when the party seeking relief from an injunction . . . can show 'a significant change either in factual conditions or in law.'" *Agostini v. Felton*, 521 U.S. 203, 215 (1997) (quoting *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 384 (1992)). "A court may grant relief under 60(b)(6) only under extraordinary circumstances." *Heirs of Guerra v. United States,* 207 F.3d 763, 767 (5th Cir. 2000).

## III. <u>ANALYSIS</u>

### A. The Requirement to Have a Functioning Board of Tax Review

The May 12, 2003 Decree requires that, prior to the issuance of any tax bills that reflect a rate other than the 1998 rate,

the Board of Tax Review must (1) consistently hold hearings on appeals, and (2) make timely decisions on those appeals. A functioning Board of Tax Review was the remedy determined for the Government's constitutional due process injury. The Defendants seek a modification or vacatur of the Decree pursuant to Federal Rule of Civil Procedure 60(b)(5) and (6).

Rule 60(b)(5) "empowers a court to modify a judgment only if it is 'prospective,' or executory." *Marshall v. Bd. of Educ.*, 575 F.2d 417, 425 (3d Cir. 1978) (finding that a judgment for monetary damages that had been paid was not prospective). "A 'prospective' injunction envisions a restraint of future conduct, not an order to remedy past wrongs when the compensation payment is withheld from the beneficiaries until some subsequent date." *Id.* at 425 n.27.

The Supreme Court has explained that because Rule 60(b)(5) "encompasses the traditional power of a court of equity to modify its decree in light of changed circumstances," *Frew v. Hawkins*, 540 U.S. 431, 441 (2004), the Court "should apply a 'flexible standard' to the modification of consent decrees when a significant change in facts or law warrants their amendment." *Id.* (citing *Rufo,* 502 U.S. at 393). Under that standard, "[a] party seeking modification of an [injunction] may meet its initial

burden by showing a significant change either in factual conditions or in law." *Rufo*, 502 U.S. at 384. If the moving party meets that burden, "the court should consider whether the proposed modification is suitably tailored to the changed circumstance." *Id.* at 383. The Supreme Court has advised that a "court cannot be required to disregard significant changes in law or facts if it is satisfied that what it has been doing has been turned through changed circumstances into an instrument of wrong." *Federation No. 91 v. Wright,* 364 U.S. 642, 647 (1961)(internal quotation marks omitted). Moreover, the Court has admonished that "[a] court errs when it refuses to modify an injunction or consent decree in light of [significant] changes." *Agostini*, 521 U.S. at 215.

Here, the Court must determine if the reforms to the Board of Tax Review have amounted to a significant change in the facts which would warrant modification of the May 12, 2003 Decree. The critical inquiry is whether the Board is functioning at a level that provides taxpayers due process. At the very least, due process secures for a taxpayer the right to a "full hearing and judicial determination at which she may raise any and all constitutional objections to the tax." *Rosewell v. LaSalle Nat. Bank,* 450 U.S. 503, 514 (1981)(citation omitted).

On July 2, 2008 the Court held an evidentiary hearing on the
Board's functionality. Following that hearing, the Court noted
that while the Board was "functioning to some degree. . . . major
aspects of the Board's operations leave the Court with
significant doubts about its functioning." *Berne Corp.* v. *Gov't
of the V.I.,* 2008 WL 4279464, at *10 (D.V.I. September 11, 2008).
The record did not show evidence of a consistent system for the
Board to manage its docket to efficiently resolve pending
appeals. *Id.* Further, there was no evidence that the Board was
maintaining reliable records. *Id.* The hearings held by the Board
did not demonstrate consistency. *Id.* There was no proof of the
Board making determinations on appeals and timely remitting
refunds connected to appeal decisions.[2] *Id.*

The Court also found disconcerting the mere two Board
meetings that had taken place since January 31, 2007, "held
within four-weeks of each other and immediately before a hearing
on the Board's compliance." *Id.* at *11. The Court acknowledged
good faith steps made to reform the Board's operations. *Id.* at
*10. However, it concluded that "the Board's attempts to comply
with the May 12, 2003 Decree have been sporadic, short-lived, and

---

[2] A prevailing taxpayer-appellant in an appeal may be
entitled to a refund. 33 V.I.C. § 2451 requires that the Tax
Assessor "shall refund any excess taxes paid within 30 days of
the judgment of the Board of Tax Review." 33 V.I.C. § 2451.

of recent vintage," and failed to bring the Board's functioning

to the level required by the Decree. *Id.*

The Government asserts that the Board of Tax Review has made

strides in the period since the last evidentiary hearing and is

now functioning at "'constitutionally required levels.'" (Defs.

Mot. to Lift or Modify Permanent Inj. 3)(quoting *Berne*, 570 F.3d

at 138). In support of its position, the Government presented the

testimony of Walter Challenger ("Challenger"), Executive Director

of the Department of Finance, at the September 17, 2009 hearing.

Challenger testified that in the period between this Court's June

19, 2008 evidentiary hearing in this matter and the September 17,

2009 hearing, the Board of Tax Review had held ten hearings, all

with a quorum present. He stated that all appellants with appeals

heard by the Board were sent written notice of the hearing date

prior to hearings being held, and only matters of taxpayers who

had received notice were placed on the agenda for hearings.

Challenger further noted that the Board of Tax Review had hired a

full-time Hearing Officer to conduct evidentiary hearings on

appeals. Additionally, he testified that the Hearing Officer had

held eight hearings.

Other individuals associated with the Board of Tax Review

also testified as to the current state of the Board's operations.

Jeanelle Roberts ("Roberts"), Board of Tax Review administrative

specialist, testified that incoming appeals are being entered,
noted in the Board's Excel spreadsheet register, and tracked. The
Commissioner of the Department of Finance, Angel Dawson, Jr.
("Dawson"), testified that taxpayer-appellants are receiving
refunds in a timely manner.

The Government has taken actions that appear to specifically
respond to this Court's assessment of the Board's functioning on
September 11, 2008.  The Department of Finance summarized the
Board of Tax Review's activities from July 2008 to June 2009 in a
Report of the Board of Tax Review ("Report"). The Report states
that the Board and its Hearing Officer have sent out notices to
appellants in advance of hearings. The Board has met more
frequently, and always with a quorum present. The Board has
reached a decision in 213 of the 277 appeals heard during the
period from July 2008 to June 2009. (Report of the Board of Tax
Review, Ex. A Defs.' Motion to Lift or Modify Permanent Inj. 1-
2.) The Hearing Officer began hearing appeals in February 2009.
She scheduled the hearing of 53 appeals for appeals of the 2006
tax year assessments. As to 10 of these appeals, she made
recommendations and submitted them to the Board of Tax Review for
determination.(*Id.* at 2.)

Notwithstanding the progress to which the Government
directs the Court, a complete review of the record provides a

more sobering account of the Board of Tax Review's performance.

An Amended Report of the Board of Tax Review ("Amended Report"), prepared by the Department of Finance and dated August 7, 2009, indicates that 112 appeals remain pending before the Board of Tax Review:

| Year | Appeals |
|------|---------|
| 1998 | 23 |
| 1999 | 16 |
| 2000 | 16 |
| 2001 | 17 |
| 2002 | 8 |
| 2003 | 7 |
| 2004 | 12 |
| 2005 | 13 |

 (Amended Report of the Board of Tax Review, Pls.' Ex. V, Hr'g Sept. 17, 2009.)

The Plaintiffs questioned Challenger about the longest standing of these appeals:

    Q: And this document then indicates that as of
    August 7th . . . there were 23 pending appeals
    from 1998, which would make them somewhere around
    11 years old, correct?

    A: Correct.

    Q: And 16 pending appeals from 1999 that would be
    about 10 years old?

A: Correct.

Q: And 16 appeals from 2000 that would be around 9
years old?

A: Correct.

(Hr'g Tr. at --, September 17, 2009.)

Subsequent to its Amended Report, the Board of Tax Review

held hearings on August 14, 2009 and August 28, 2009 ("the August

2009 hearings"). The hearing summaries from the August 2009

hearings represent that the Board of Tax Review disposed of 36 of

the 1998 appeals during its August 2009 hearings. While there is

some dispute about the number of 1998 appeals that were disposed

of and the means by which the taxpayers were given notice, it is

undisputed that appeals from as far back as 1999 and 2000 still

remain pending. Indeed, Challenger testified that long deferred

appeals from that time remain unresolved:

Q: . . . [F]or 1999 . . . a total of four appeals . . .
have been pending for 10 years now, correct?

A: Yes.

Q: And for 2000 . . . a total of 9 appeals . . . have
been pending for around 9 years?

A: Yes.

(*Id.* at --.)

Challenger's unflattering disclosure was reinforced by the

testimony of Jeanelle Roberts and Commissioner Angel Dawson.

Indeed, Ms. Roberts revealed as much when questioned by the

Court:

> THE COURT: [I]s there a register that would
> indicate all pending appeals, not just for 2006?
> My question is not limited to 2006.
>
> THE WITNESS: There is a register that indicates
> pending appeals.
>
> THE COURT: All right. And that would be all
> pending appeals, is that right?
>
> THE WITNESS: All pending appeals.
>
> THE COURT: All right. On that list are there any
> appeals that have been pending for longer than 30
> days?
>
> THE WITNESS: Prior to 2006, yes.
>
> THE COURT: All right. Are there any appeals on
> that list that have been pending for more than 60
> days?
>
> THE WITNESS: Prior to 2006, yes.
>
> . . .
>
> THE COURT: Are there any appeals on that list that
> have been pending for more than 120 days?
>
> THE WITNESS: Prior to 2006, yes.
>
> . . .
>
> THE COURT: All right . . . are there any appeals
> on that list that have been pending for more than
> 2 years?
>
> THE WITNESS: Prior to 2006, yes.
>
> THE COURT: All right. To your knowledge, what is
> the longest pending appeal on the list?

THE WITNESS: I can't really say.

(*Id.* at --.)


It can hardly be argued that those taxpayer-appellants have received a timely hearing. Moreover, the Board of Tax Review has no established procedure for determining the order in which these backlogged appeals will be heard. For instance, at the September 17, 2009 hearing, Dawson was questioned about the Board's management of backlogged appeals:

> THE COURT: All right. So is it the case that the first in, the first appeal in is the first one that's up for a hearing?
>
> THE WITNESS: I'm not going to represent that that is consistently so, Your Honor.
>
> THE COURT: All right. Is there some protocol or procedure that is available for review on how that's done? That is, you schedule the oldest appeals first or not?
>
> THE WITNESS: Well I'll be perfectly honest with you, being relatively new to both roles, the-- as the administrative overseer, as Commissioner of Finance, at the Office of the Board of Tax Review, as well as Chairman of the Board, I'm looking at all areas in terms of possibility for improvement, including documentation, policies, protocols, things of that sort. So that is presently being reviewed and undertaken.
>
> THE COURT: Well, my question, to you though, is a little bit different. My question is, is there some protocol now? Yes or no.

THE WITNESS: No formal protocol that I'm aware of.

(*Id.* at --.)

To its credit, the Government has implemented some of the familiar markers of due process, including providing notice of hearings and scheduling hearings. Notwithstanding those inroads, the conditions that motivated this lawsuit have still not been completely addressed. In spite of administrative progress and more frequent hearings, taxpayers with appeals pending for ten years still have not been provided a full hearing at which to raise their objections to the real property taxes they challenge. If the Board of Tax Review is unable to provide due process to its longest suffering taxpayer-appellants, it cannot claim to function at constitutionally required levels.

### B. Uniform Standards of Professional Appraisal Practice

"A critical question in [a] Rule 60(b)(5) inquiry is whether the objective of the . . . .[underlying] order . . . has been achieved." *Horne v. Flores*, 129 S. Ct. 2579, 2595 (2009). In applying equitable principles during this evaluation, the Court undertakes a holistic review of the challenged order. To that end, the Court will now address the status of the Uniform Standards of Professional Appraisal Practice ("USPAP") which have been linked to the May 12, 2003 Decree and which continue to be a

source of much contention.

USPAP was first discussed in the December 19, 2000
Settlement Agreement between plaintiffs, the Berne Corporation
and B&B Corporations, and the Defendants. *See Berne II*, 262 F.
Supp. 2d at 548. In the Berne Settlement, the parties agreed to
select a special master to "'review the procedures and process to
be used by the Virgin Islands Tax Assessor's office in appraising
commercial properties pursuant to a mass appraisal approach and
Uniform Standards of Professional Appraisal Practice . . . .'"
*See id.* (quoting the Berne Settlement).[3]

At the October 15, 2009 hearing, the Court heard argument
from the parties about the continuing applicability of USPAP.
Additionally, at the request of the Court, the parties submitted
supplemental briefings regarding the effect on a private
settlement agreement when the legal impetus for that settlement
is repealed.

In its May 2003 Decree, the Court ordered the Government to
comply with two significant directives. The first directive
enjoined the Tax Assessor from appraising and assessing any real
property in the Virgin Islands until he had adjusted the

_____

[3] In a December 19, 2000 Order, this Court approved the
Berne Settlement. The violation of that Order precipitated the
issuance of the May 12, 2003 Decree.

appraisal system to comply with the 1936 act. The second

directive enjoined the Government to establish "a functioning

Board of Tax Review that consistently holds hearings and reaches

determinations on appeals." *Berne*, 2008 WL 4279464, at *2. It is

the first directive that seems to give rise to the current

dispute about the continuing validity of the USPAP requirements.

The Plaintiffs contend that the Court's partial vacatur

Order resulted in deletion of the references to the 1936 Act in

the May 12, 2003 Decree but left intact the remaining portions of

the Decree. They argue that among the enduring requirements was

the mandate that the Defendants comply with the terms of the

Berne Settlement, including its provision for the application of

USPAP to the Defendants' tax assessment practices. Specifically,

they highlight Section 4 of the May 12, 2003 Decree, which

states:

> 4. **DECREED** that the Government of the Virgin Islands and Roy
> Martin, in his official capacity as Tax Assessor of the
> Virgin Islands, shall fully, promptly, and diligently comply
> with all the conditions and perform all the terms of the
> settlement agreement entered into with the plaintiffs in
> *Berne Corp. v. Government of the Virgin Islands*, Civil 2000-
> 141, and 21 *Queens Quarter v. Government of the Virgin
> Islands*, Civil No. 2000-167 ["*Berne* Settlement Agreement"].

*Berne II*, 262 F. Supp. 2d at 576.

The Defendants reject the continuing applicability of the

Berne Settlement. They note that the Court's partial vacatur

Order vacated all portions of the May 12, 2003 Decree except the

portion requiring a functioning Board of Tax Review. The

Defendants assert that the Berne Settlement in no way bears on

the functioning of the Board of Tax Review. They instead argue

that the 1936 Act was the predicate for the Berne Settlement. In

light of the Court's partial vacatur Order, the Defendants assert

that all portions of the Berne Settlement related to the 1936 Act

have been rendered ineffective.

The Plaintiffs' argument is wanting as it inappropriately

conflates the raison d'etre for two distinct processes: tax

appeals as administered by the Board of Tax Review and tax

appraisals as contemplated by USPAP. The proceedings that occur

before the Board of Tax Review constitute a distinct part of the

tax system. The Board of Tax Review provides a forum for

taxpayers to challenge issues related to property taxes. It is

the availability of due process in that forum that the Court is

tasked with reviewing.

USPAP governs the appraisal of real property and the

determination of real property tax values. Though problematic

appraisals may be raised in a Board of Tax Review hearing, the

effectiveness of the Board of Tax Review as a forum that provides

due process to taxpayers may be adjudged without necessarily

probing into the underlying appraisal methods. Significantly,
the USPAP requirements remain relevant primarily as a function of
the Berne Settlement's objective to ensure appraisal in
accordance with the 1936 Act. Therein lies the rub to the
Plaintiffs' argument--the underlying basis for the USPAP
requirements in the Berne Settlement was removed with the repeal
of the 1936 act.

In *Rufo v. Inmates of Suffolk County Jail,* 502 U.S. 367
(1992), the Supreme Court noted that pursuant to Rule 60(b)(5)
"[a] party seeking modification of a consent decree may meet its
initial burden by showing a significant change either in factual
conditions or law." *Id.* at 384. The Court stated that a
modification of a consent decree may be justified when a change
in statutory or decisional law makes lawful what the consent
decree was established to restrict. *Id.* at 388.

In *Brown v. Tenn. Dep't of Fin. and Admin.*, 561 F.3d 542
(6th Cir. 2009), the Sixth Circuit extended the *Rufo* rule to a
private settlement agreement.[4] That case involved a settlement
agreement that was the product of a § 1983 suit brought by a

---

[4]In a footnote, the Sixth Circuit's opinion highlighted the
fact that the district court retained jurisdiction over the
settlement agreement "'for all purposes,'" and therefore, deemed
the settlement agreement the functional equivalent of a consent
decree. 561 F.3d at 546 n.2.

class of mentally disabled Tennessee residents. The plaintiffs

claimed that Tennessee was violating Medicaid law because

individuals eligible for either services in an Intermediate Care

Facility for the Mentally Retarded (ICF/MR) or through

Tennessee's "home and community based services" Medicaid waiver

program under the Medicaid Act, were being denied access to

waiver services.[5] The parties reached a settlement agreement,

wherein Tennessee agreed to retool its programs to respond to

some of the alleged Medicaid deficiencies.

Subsequently, the Sixth Circuit in *Westside Mothers v.*

*Olszewski*, 454 F.3d 532 (6th Cir. 2006) ("*Westside Mothers II*"),

expressly addressed a state's duty to provide "medical

---

[5] Medicaid is a federal "grant-in aid" program.  In exchange
for federal funds, states administer state Medicaid plans that
meet the approval of the U.S. Department of Health and Human
Services. Medicaid requires that a state plan must make "medical
assistance" available to Medicaid beneficiaries. §§ 1396(a)(8),
1396(a)(10).

Congress has established a waiver system, wherein, states
can be excused from certain Medicaid requirements in providing
approved community care programs. 42 U.S.C. § 1396n(c)(3). One
such waiver program is the Home and Community Based Services
("HCBS") waiver program. It offers a number of noninstitutional
care choices for Medicaid beneficiaries who would rather live at
home or in the community than in an institution. *Sanchez v.*
*Johnson*, 416 F.3d 1051, 1054 (9th Cir. 2005). The waiver program
at issue in *Brown* was such a program. The number of individuals
who could receive services through that waiver program was capped
at a number proposed by Tennessee and authorized by Federal
Center for Medicaid Services in the Department of Health and
Human Services. 561 F.3d at 544 n.1.

assistance" under the terms of the Medicaid statute. The Sixth

Circuit held that  Medicaid merely required a state to provide

financial assistance to beneficiaries seeking medical assistance

and did not give rise to a duty to directly provide medical

services. 454 F.3d at 539-41.

Tennessee then moved to vacate the order approving its

settlement agreement because it argued that *Westside Mothers II*

established that a state does not have an obligation to guarantee

access to waiver services under the Medicaid Act.  The district

court denied the motion to vacate in its entirety. It reasoned

that *Westside Mothers II* did not alter the contractual duties

that parties agreed to in a private settlement. On appeal, the

Sixth Circuit noted that:

> [T]he fact that Tennessee settled this case is beside
> the point. What matters under *Rufo* is not that
> Tennessee agreed to take the actions specified in the
> settlement, but what those actions were intended to
> remedy: if the settlement was premised on the
> understanding that the Medicaid statute imposed upon
> Tennessee a duty to ensure the provision of medical
> services, then *Rufo* counsels that we vacate the agreed
> order because *Westside Mothers II* established that no
> such duty exists.

*Brown v. Tenn. Dep't of Fin. and Admin.*, 561 F. 3d at 546

(footnote omitted). Given the change in decisional law, the Sixth

Circuit in *Brown* held that the district court erred in refusing

to modify the agreement in any way. *Id.* at 548. The Court vacated

two portions of the settlement agreement regarding the provision

of waiver services because they did not "appear to remedy any

violation of federal law" given the change in decisional law. *Id.*

When Congress enacted 48 U.S.C. § 1401 in 1936, it provided

that "all taxes on real property in the Virgin Islands shall be

computed on the basis of actual value of such property . . . ."

48 U.S.C. § 1401, 49 Stat. 1372 *repealed by* Act June 29, 2007,

P.L. 110-40, § 1(a), 121 Stat. 232. Pursuant to that statute, the

local Legislature enacted 33 V.I.C. § 2404(a)(amended 2008). 33

V.I.C. § 2404(a) outlined factors to be taken into account in

calculating actual value: "(1) location and surroundings;(2)

quality of fertility;(3) condition of structures;(4) recent cost

to the present owner;(5) recent sale of adjacent property;(6)

recent bona fide purchaser;(7) accessibility;(8) proximity to

public facilities, conveniences and utilities;(9) rental or

income derived directly from the property."

The Plaintiffs contend that in fashioning the Berne

Settlement, the parties elected to use USPAP because the "federal

statute contained no procedure for determining 'actual value' and

the local statute . . . would not result in a determination of

'actual value' as that term is understood in the appraisal

community. . . ." (James Derr Aff. ¶ 12, Attach. 1 Pls.'

Supplemental Post-Hr'g Mem.). They further assert that

constitutional principles of due process and equal protection

formed the basis of the Berne Settlement, and not the now

repealed 48 U.S.C. § 1401a. However, in the Berne Plaintiffs'

original complaint, claims that the tax assessment system

violated procedural and substantive due process were linked to

the Defendants' failure to adhere to the requirements of 48

U.S.C. § 1401a and 33 V.I.C. § 2404.[6] Moreover, in its May 12,

2003 Memorandum Opinion the Court noted that:

> The parties negotiated a settlement of the *Berne*
> case, which was approved on December 19, 2000. The
> Government and the Tax Assessor agreed to bring the
> Virgin Islands real property tax system into
> compliance with the federal requirement that
> property be assessed on its actual value, which I
> have found to be the same as its market value. The
> parties agreed that the Tax Assessor would develop
> and implement "the procedures and process to be
> used by the Virgin Islands Tax Assessor's office in
> appraising commercial properties pursuant to a mass
> appraisal approach and Uniform Standards of
> Professional Appraisal Practice ('USPAP
> Standards')."

*Berne II*, 262 F. Supp. 2d at 573.

The analysis in *Rufo* is instructive here. The action the

---

[6] The Plaintiffs assert that the primary purpose of the
settlement agreement was not to adhere to statutory requirements,
but rather to settle on a methodology that would be fair and deal
with all property owners equitably, tenets at the core of due
process and equal protection. They argue that the Government has
not met its burden of proving that 48 U.S.C. § 1401a was the
basis for the settlement agreement.

Berne Settlement was designed to remedy was the noncompliance of
the Government with the federal statutory requirement that real
property taxes be assessed at actual value. The Berne
Settlement's provisions that the practices of the Tax Assessor's
office align with USPAP, were a means to bring the Government's
tax assessment into conformity with 48 U.S.C. § 1401a. With
Congress' repeal of 48 U.S.C. § 1401a, the Government's duty to
assess real property at actual value no longer exists. This
Court's partial vacatur Order already vacated the portions of the
May 12, 2003 Decree requiring that real property be assessed in
compliance with the 1936 Act. *Rufo* further counsels vacatur of
this Court's Order approving the provisions of the Berne
Settlement which mandate the Government's compliance with USPAP.

## IV. <u>CONCLUSION</u>

Once again, the Government seeks relief from an injunction
occasioned by unconstitutional conduct. It is beyond cavil that
before such relief is afforded, the Government must demonstrate
that it is functioning at a level at which it is able to provide
due process to all taxpayers, including those with longstanding
appeals. Unfortunately, the Government is not yet able to do
that.

At the September 17, 2009 hearing, the Court asked the
Government:

> THE COURT: But my question to you is that should the
> government get this Court's imprimatur because of good
> efforts, is that good enough, or should the Court give
> its seal of approval when the matters are resolved?
> Things are cleared up?
>
> MS. THOMAS-JACOBS: Your Honor I think-- I don't see any
> reason why the Court cannot grant a seal of approval at
> this time, Your Honor.
>
> I think -- to --Your Honor to do--to take the position
> that the Court should not grant the seal of approval
> until all the matters are resolved and until the Board
> hears all appeals within 120 days *it's just not
> possible*.
>
> The government cannot collect taxes. It cannot. . .

(Hr'g Tr. at --, September 17, 2009)(emphasis supplied).

The Government's position is remarkable in several respects.
First, it seeks to give currency to a false premise that it is
impossible to satisfy a legal mandate that requires the hearing
of tax appeals within 120 days. As a consequence, it seeks the
equivalent of a waiver or pardon of its obligation. Second, it
suggests the equally false, but more disturbing notion that it
cannot collect taxes.

As the Court noted at the hearing, it has not barred the
Government from collecting real property taxes:

> THE COURT: Almost every hearing I hear that. This Court
> has not said that the government cannot collect taxes.
> The Government could collect at the 1998 rates. Could
> have done it last year or any time. The government
> chose not to.

(*Id.* at --.)

Consistent with the May 12, 2003 Decree, the Government is free to collect real property taxes at the 1998 assessment level. The Government has not availed itself of this option, but instead, seems content to repeat the unfounded assertion that it cannot collect taxes, as if repetition makes it so.

Moreover, the Government laments circumstances of its own making. The Constitution requires that due process protections be afforded to taxpayers. *See, e.g.*, *McKesson Corp. v. Div. of Alcoholic Beverages and Tobacco*, 496 U.S. 18, 36 (1990)("Because exaction of a tax constitutes a deprivation of property, the State must provide procedural safeguards against unlawful exactions in order to satisfy the commands of the Due Process Clause."). The Supreme Court has noted that in the tax setting, due process affords taxpayers "not only a fair opportunity to challenge the accuracy and legal validity of their tax obligation, but also a 'clear and certain remedy' for any erroneous or unlawful tax collection to ensure that the opportunity to contest the tax is a meaningful one." *McKesson Corp.*, 496 U.S. at 36 (quoting *Atchison et al. v. O'Connor*, 223 U.S. 280, 285 (1992)). For those taxpayer-appellants whose hearing is delayed ten years it can hardly be said that a clear

and certain remedy is at hand.

The Court's May 12, 2003 Decree, enjoining the collection of real property taxes at a rate other than the 1998 assessment level, was issued to rectify the Government's constitutionally violative practices. The Court's imprimatur then should be given when the Board of Tax Review provides to all taxpayers the process guaranteed for them by the Constitution.

The greater regularity in Board of Tax Review hearings, the institution of a Hearing Officer before whom tax hearings are now being held, and the mailing of notices 30 days in advance of hearings demonstrate improvement. At the same time, the failure to timely hear appeals that have been pending for ten years most assuredly does not. Rather, it bespeaks of inchoate progress.

The Court is mindful of the Government's efforts and its laudable intentions. However, the record in this matter is replete with examples of the Government undertaking unconstitutional conduct, while at the same time professing the best intentions. As such, good intentions now provide an insufficient basis to alter the status quo.

Accordingly, the Court will modify the May 12, 2003 Decree insofar as it requires compliance with USPAP.[7] In all other

---

[7] In the Court's September 11, 2008 partial vacatur Order it vacated the portion of the May 12, 2003 Decree that relied on the

respects the May 12, 2003 Decree remains unmodified.

The Court will continue to monitor the Board of Tax Review

on a biannual basis to determine whether the Defendants are in

compliance with the May 12, 2003 Decree.

An appropriate Order follows.

S_____
**CURTIS V. GÓMEZ**
**Chief Judge**

_____

1936 Act. That partial vacatur Order did not end the Government's
duty to comply with USPAP pursuant to its obligations under the
Berne Settlement. Because the Court now finds that the
Government's duty to comply with USPAP requirements under the
private Berne Settlement has been obviated, it will modify the
May 12, 2003 Decree correspondingly.

**FOR PUBLICATION**

**DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. THOMAS**

| | | | |
|---|---|---|---|
| Berne Corp. and B & B Corp., Twenty-one Queens Quarter, Inc., Miller Properties, Inc., Equivest St. Thomas, Inc., Robert Schmidt, Kim Holdsworth, Robert Schmidt Development Corp., and Dori P. Derr, The Cyril V. Francois Associates, LLC, Shell Seekers, Inc., Charles W. Consolvo, Linda B. Consolvo, Snegle Gade Associates LP, Charles W. Consolvo as Trustee of the Yvette B. Lederberg Trust, Arthur B. Choate, Stewart Loveland, and Stacy Loveland, Elizabeth Sharp, Lindon Corp., Gordon L. Coffelt, Soraya Diase Coffelt, and One Stop, Inc., | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Civil Nos. | 2000-141 2000-167 2001-151 2001-155 2001-181 2001-196 2001-197 2001-228 2002-057 |
| Plaintiff, | ) ) ) | | |
| v. | ) ) ) | | |
| GOVERNMENT OF THE VIRGIN ISLANDS, BERNADETTE WILLIAMS, in her official capacity as Tax Assessor, and the Board of Tax Review, | ) ) ) ) ) ) | | |
| Defendants. | ) ) | | |
| _____ | ) | | |

**ATTORNEYS:**

**James M. Derr, Esq.**
St. Thomas, U.S.V.I.
          *For the plaintiffs Berne Corp., B & B Corp., Miller*
          *Properties, Inc., Robert Schmidt, Robert Schmidt*

*Development Corp., Kim Holdsworth, Dori P. Derr, and Elizabeth Sharp.*

**Chad C. Messier, Esq.**
St. Thomas, U.S.V.I.
    *For plaintiff Equivest St. Thomas, Inc.*

**Soraya Diase-Coffelt, Esq.**
St. Thomas, U.S.V.I.
    *For plaintiffs Lindon Corp., Gordon L. Coffelt, Soraya Diase Coffelt, and One Stop, Inc.*

**David A. Bornn, Esq.**
St. Thomas, U.S.V.I.
    *For plaintiffs The Cyril V. Francois Associates, LLC and Twenty-One Queen Quarter, Inc.*

**Carol Thomas-Jacobs, Esq.**
St. Thomas, U.S.V.I.
    *For the defendants.*

**ORDER**

**GÓMEZ, C.J.**

Before the Court is the motion of the defendants, the Government of the Virgin Islands (the "Government"), Bernadette Williams ("Williams"), in her official capacity as Tax Assessor, and the Board of Tax Review (the "Board")(collectively referred to as the "Defendants"), to lift or modify this Court's May 12, 2003 Decree and Order, enjoining the collection of real property taxes at rates above those for the 1998 calendar year, and to dismiss these actions.

For the reasons explained in the accompanying Memorandum Opinion of even date, it is hereby

**ORDERED** that the motion is **DENIED** insofar as it seeks vacatur of the portion of the May 12, 2003 Decree that requires a

functioning Board of Tax Review prior to the issuance of tax bills that reflect a rate other than the 1998 rate; and it is further

**ORDERED** that Section 1.a. of this Court's Order of December 19, 2000 approving the Berne Settlement agreement is **VACATED**; and it is further

**ORDERED** that the portion of the May 12, 2003 Decree that requires compliance with Uniform Standards of Professional Appraisal Practice ("USPAP") is **VACATED**; and it is further

**ORDERED** that the Court will continue to monitor the Board of Tax Review on a biannual basis to determine whether the Defendants are in compliance with the May 12, 2003 Decree.

S\_____
                **CURTIS V. GÓMEZ**
                   **Chief Judge**