DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS & ST. JOHN

Berne Corp. and B & B Corp.,          )
Twenty-one Queens Quarter,            )
Inc., Miller Properties, Inc.,        )
Equivest St. Thomas, Inc.,            )
Robert Schmidt, Kim                   )    Civil Nos.    2000-141
Holdsworth, Robert Schmidt            )                  2000-167
Development Corp., and Dori P.        )                  2001-151
Derr, The Cyril V. Francois           )                  2001-155
Associates, LLC, Shell                )                  2001-181
Seekers, Inc., Charles W.             )                  2001-196
Consolvo, Linda B.                    )                  2001-197
Consolvo, Snegle Gade                 )                  2001-228
Associates LP, Charles W.             )                  2002-057
Consolvo as Trustee of the            )
Yvette B. Lederberg Trust,            )
Arthur B. Choate, Stewart             )
Loveland, and Stacy                   )
Loveland, Elizabeth Sharp,            )
Lindon Corp., Gordon L.               )
Coffelt, Soraya Diase Coffelt,        )
and One Stop, Inc.,                   )
                                      )
              Plaintiff,              )
                                      )
       v.                             )
                                      )
GOVERNMENT OF THE VIRGIN              )
ISLANDS, BERNADETTE WILLIAMS,         )
in her official capacity as           )
Tax Assessor, and the Board of        )
Tax Review,                           )
                                      )
              Defendants.             )
_____)

ATTORNEYS:

James M. Derr, Esq.
St. Thomas, U.S.V.I.
        *For the plaintiffs Berne Corp., B & B Corp., Miller*
        *Properties, Inc., Robert Schmidt, Robert Schmidt*

*Berne Corp., et al. v. Government of the Virgin Islands, et al.*
Civil Nos. 2000-141, 2000-167, 2001-151, 2001-155, 2001-181, 2001-196,
2001-197, 2001-228, 2002-057
Memorandum Opinion
Page 2

> *Development Corp., Kim Holdsworth, Dori P. Derr, and
> Elizabeth Sharp.*

**Soraya Diase-Coffelt, Esq.**
St. Thomas, U.S.V.I.
> *For plaintiffs Lindon Corp., Gordon L. Coffelt, Soraya
> Diase Coffelt, and One Stop, Inc.*

**David A. Bornn, Esq.**
St. Thomas, U.S.V.I.
> *For plaintiffs The Cyril V. Francois Associates, LLC
> and Twenty-One Queen Quarter, Inc.*

**Carol Thomas-Jacobs, Esq.**
St. Thomas, U.S.V.I.
> *For the defendants.*

### <u>**MEMORANDUM OPINION**</u>

**GÓMEZ, C.J.**

Before the Court is the motion of the defendants, the

Government of the Virgin Islands (the "Government"); Bernadette

Williams[1], in her official capacity as Tax Assessor ("Williams");

and the Board of Tax Review (the "Board") (collectively referred

to as the "Defendants"), to lift or modify a permanent injunction

issued by this Court, enjoining the collection of real property

taxes at rates above those for the 1998 calendar year.  The

---

[1] Federal Rule of Civil Procedure 25(d) ("Rule 25(d)") provides that,
"[a]n action does not abate when a public officer who is a party in an
official capacity dies, resigns or otherwise ceases to hold office while the
action is pending. The officer's successor is automatically substituted as a
party." Bernadette Williams has assumed the position of Tax Assessor and
succeeds former Tax Assessor, Roy Martin. Pursuant to Rule 25(d) she is
substituted in Martin's place as a party to this action.

*Berne Corp., et al. v. Government of the Virgin Islands, et al.*
Civil Nos. 2000-141, 2000-167, 2001-151, 2001-155, 2001-181, 2001-196,
2001-197, 2001-228, 2002-057
Memorandum Opinion
Page 3

Defendants seek relief pursuant to Rule 60(b) of the Federal
Rules of Civil Procedure ("Rule 60(b)").

## I. FACTUAL AND PROCEDURAL BACKGROUND

This action was initiated by owners of commercial real
estate in the Virgin Islands subject to commercial real property
taxes assessed by the Government of the Virgin Islands.
Plaintiffs alleged violations of 48 U.S.C. § 1401 (repealed
2007)("the 1936 act"), which mandated that real estate tax
assessments for the territories be at "actual value." They also
alleged violations of the Revised Organic Act of 1954, 48 U.S.C.
§ 1541, and infringements of their procedural and substantive due
process rights under the Fourteenth Amendment of the United
States Constitution.  The Court preliminarily enjoined the
Government and tax assessor Roy Martin ("Martin") from assessing
and collecting commercial property taxes in violation of the 1936
Act.

Following the Court's ruling, the parties negotiated a
settlement (the "Berne Settlement"), which the District Court
approved on December 19, 2000. The Government agreed to implement
a new real property tax assessment system pursuant to the Berne
Settlement.

On May 12, 2003, the Court found that the Defendants had
materially breached the Berne Settlement and ordered that it be

*Berne Corp., et al. v. Government of the Virgin Islands, et al.*
Civil Nos. 2000-141, 2000-167, 2001-151, 2001-155, 2001-181, 2001-196,
2001-197, 2001-228, 2002-057
Memorandum Opinion
Page 4

specifically performed. *Berne Corp. v. Gov't of the V.I.*, 262 F.
Supp. 2d. 540, 575 (D.V.I. 2003). Moreover, the Court issued a
decree ("the May 12, 2003 Decree") enjoining the Defendants from
requiring the payment of real property tax bills.

The Court required two primary conditions be met before the
Government could assess real property and issue tax bills. The
first condition was the establishment of a property tax system
that reliably and credibly assessed and taxed all real property
based on its actual value. *Id*. The second condition was the
requirement that the Government demonstrate to the Court's
satisfaction that it has a functioning Board of Tax Review that
consistently holds hearings and makes determinations on appeals.
*Id.*

The Court made the injunction of the assessment and
collection of tax bills applicable to all real property taxpayers
in the Virgin Islands. *Id.* at 572. However, the Court held that
the Government could issue bills to non-party taxpayers based on
the assessment values for the 1998 calendar year reflected in the
1999 tax bills if it provided a mechanism to adjust the
assessments and bills retroactively. *Id.* Thereafter, the
Legislature of the Virgin Islands passed Act No. 6586 ("Act
6586") which provided such a mechanism. It authorized the Tax
Assessor to issue tax bills and collect taxes at the 1998

*Berne Corp., et al. v. Government of the Virgin Islands, et al.*
Civil Nos. 2000-141, 2000-167, 2001-151, 2001-155, 2001-181, 2001-196,
2001-197, 2001-228, 2002-057
Memorandum Opinion
Page 5

assessment level for all classes of real property for the tax years 1999, 2000, 2001, 2002, 2003 and 2004 before a fully compliant tax system was instituted. Act 6586 also provided that the tax due would be subject to adjustment for each year once a new tax system was implemented. Accordingly, in August 2003, the Court modified the May 2003 Decree to allow the Government to collect property taxes based on the 1998 assessment levels. *Berne Corp. v. Gov't of the V.I.*, 276 F. Supp. 2d 435, 436 (D.V.I. 2003).

On June 29, 2007, Congress repealed the 1936 Act. Congress made the repeal retroactive to July 22, 1954. In response to the repeal, the Defendants filed a motion to vacate the May 2003 Decree. Before this Court ruled on the status of the May 2003 injunction, on March 10, 2008, the Governor of the Virgin Islands signed into law Act No. 6991 ("Act 6991").

Act 6991 amends or repeals several sections of Title 33 of the Virgin Islands Code, which sets forth the laws governing taxation and finance in the territory. Among other things, the act authorized Martin to issue real property tax bills for the year 2006 during the 2008 fiscal year. In accordance with Act 6991, the Government issued real property tax bills for 2006 at rates not based on the 1998 assessments values.

After a hearing, the Court issued an Order on September 11,

*Berne Corp., et al. v. Government of the Virgin Islands, et al.*
Civil Nos. 2000-141, 2000-167, 2001-151, 2001-155, 2001-181, 2001-196,
2001-197, 2001-228, 2002-057
Memorandum Opinion
Page 6

2008, finding the Government in contempt for its issuance of the 2006 tax bills in violation of the requirements of the May 12, 2003 Decree. On that same day, the Court also ordered vacatur of the part of the May 12, 2003 Decree that relied upon the 1936 Act but retained jurisdiction over the rest of the May 12, 2003 Decree, which ordered reform of the Board of Tax Review.

The Government challenged the Court's jurisdiction and its contempt Order. The Third Circuit affirmed this Court's Order finding the Government in contempt of the May 12, 2003 Decree, as well as the Court's Order vacating the part of the Decree that relied upon the 1936 act.  Commenting on the Board of Tax Review, the Third Circuit noted that, "we agree with the District Court's application of fact to law—that the Board of Tax Review's functionality did not meet constitutionally required due process standards." *Berne Corp. v. Gov't of the V.I.*, 570 F.3d 130, 139 (3d Cir. 2009).

In June 2009, the defendants moved to vacate or modify the injunction, asserting that improvements in the functioning of the Board of Tax Review established a significant change in facts. The Court held hearings on the Board's functioning.  Evidence was presented about the appeals pending before the Board.  The Court concluded that the Board was not functioning at constitutionally required levels.

*Berne Corp., et al. v. Government of the Virgin Islands, et al.*
Civil Nos. 2000-141, 2000-167, 2001-151, 2001-155, 2001-181, 2001-196,
2001-197, 2001-228, 2002-057
Memorandum Opinion
Page 7

On March 10, 2010, the Virgin Islands legislature passed Act No. 7154.  That act permits the Tax Assessor to "issue real property tax bills and collect taxes at the 1998 rate and assessment level for tax years 2006, 2007, 2008, 2009, and for future tax years, or until such time as the District Court vacates the May 12, 2003 Injunction or permits the Tax Assessor to collect property taxes at a rate other than that set forth in the Court's August 13, 2003 Order."  The Tax Assessor has issued revised 2006 tax bills to all Virgin Islands real property owners pursuant to Act No. 7154. *See* (Tax Assessor Bernadette William Aff. ¶¶ 4-5, Dec. 22, 2010.)

On May 13, 2010 and June 17, 2010, the Court heard evidence about the Board's functioning as part of the first segment of its biannual review.  The defendants offered testimony from Jeanelle Mollenaar Roberts ("Roberts"), administrative specialist of the Board of Tax Review, and Angel Dawson ("Dawson"), Commissioner of the Department of Finance and Chairman of the Board of Tax Review.

The Plaintiffs offered testimony from taxpayer-appellant Bennett Chan as well as the testimony of Pam Gaffin, who served as an agent for a taxpayer-appellant at a hearing. They also presented testimony from, Steven Jamron ("Jamron"), a tax appraiser who performed an appraisal on Four Winds Plaza.  Four

*Berne Corp., et al. v. Government of the Virgin Islands, et al.*
Civil Nos. 2000-141, 2000-167, 2001-151, 2001-155, 2001-181, 2001-196,
2001-197, 2001-228, 2002-057
Memorandum Opinion
Page 8

Winds Plaza is a party that has a tax appeal pending before the Board of Tax Review. Finally, the Plaintiffs examined Tax Assessor, Bernadette Williams.

On December 20, 2010, the Court heard evidence in conjunction with the latter part of its biannual review. Roberts and Dawson offered testimony regarding the Board's recent operations. The Plaintiffs offered the testimony of Charles Consolvo who has filed an appeal regarding the 2006 tax bill issued to him in 2008 for property owned by Island Resources Foundation. They also presented the testimony of Jamron, who discussed his appeal of the 2006 tax bill issued to him in 2008.

Subsequent to the December 20, 2010 hearing, the Plaintiffs informed the Court that they no longer oppose the Defendants' motion to vacate the injunction. Notwithstanding the parties' consensus, the Court must satisfy itself that the Board of Tax Review is operating at constitutionally required levels and that lifting the injunction is appropriate. The Court will thus address the Defendants' uncontested motion below.

## II. <u>DISCUSSION</u>

Rule 60(b) of the Federal Rules of Civil Procedure provides, in pertinent part:

> On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

*Berne Corp., et al. v. Government of the Virgin Islands, et al.*
Civil Nos. 2000-141, 2000-167, 2001-151, 2001-155, 2001-181, 2001-196,
2001-197, 2001-228, 2002-057
Memorandum Opinion
Page 9

. . . .
     (5) the judgment has been satisfied, released, or
     discharged; it is based on an earlier judgment that has
     been reversed or vacated; or applying it prospectively
     is no longer equitable; or
     (6) any other reason that justifies relief.

FED. R. CIV. P. 60(b).  A Rule 60(b)(5) motion may be granted

"when the party seeking relief from an injunction . . . can show

'a significant change either in factual conditions or in law.'"

*Agostini v. Felton*, 521 U.S. 203, 215 (1997) (quoting *Rufo v.*

*Inmates of Suffolk County Jail*, 502 U.S. 367, 384 (1992)). "[A]

party seeking modification of a consent decree bears the burden

of establishing that a significant change in circumstances

warrants revision of the decree.  If the moving party meets this

standard, the court should consider whether the proposed

modification is suitably tailored to the changed circumstance."

*Rufo*, 502 U.S. at 383.   The Court of Appeals for the Third

Circuit has noted its reluctance to set forth a "rigid,

pervasively applicable rule" governing the modification of an

injunction. *Building and Const. Trades Council of Philadelphia*

*and Vicinity*, *AFL-CIO v. N.L.R.B.*, 64 F.3d 880, 888 (3d Cir.

1995).  The Third Circuit has discussed the following factors as

relevant in a court's consideration of whether to modify a

permanent injunction:

     [T]he circumstances leading to entry of the injunction

*Berne Corp., et al. v. Government of the Virgin Islands, et al.*
Civil Nos. 2000-141, 2000-167, 2001-151, 2001-155, 2001-181, 2001-196,
2001-197, 2001-228, 2002-057
Memorandum Opinion
Page 10

and the nature of the conduct sought to be prevented;
the length of time since entry of the injunction;
whether the party subject to its terms has complied or
attempted to comply in good faith with the injunction;
and the likelihood that the conduct or conditions
sought to be prevented will recur absent the
injunction.

*Id.*

## III. <u>ANALYSIS</u>

The May 12, 2003 Decree underlying this action required two
conditions to be met prior to the lifting of the injunction. The
first condition was that the Government's property tax system
conform to the requirements of the 1936 act, 48 U.S.C. § 1401
(repealed 2007), which provided that real property be assessed at
"actual value."  The need to satisfy that condition was obviated
by the repeal of the 1936 Act. Following the repeal of the 1936
Act, the single remaining condition to be satisfied is the
establishment of  "a functioning Board of Tax Review that
consistently holds hearings and reaches determinations on
appeals." *Berne*, 570 F.3d at 138.

Fundamentally, the Board of Tax Review must provide
taxpayers with due process.  The key components of procedural due
process are notice and an opportunity to be heard. *See, e.g.,*
*Central of Georgia Ry.* v. *Wright*, 207 U.S. 127, 142 (1907)
(noting "that the assessment of a tax is action judicial in its

*Berne Corp., et al. v. Government of the Virgin Islands, et al.*
Civil Nos. 2000-141, 2000-167, 2001-151, 2001-155, 2001-181, 2001-196,
2001-197, 2001-228, 2002-057
Memorandum Opinion
Page 11

nature, requiring for the legal exertion of the power such
opportunity to appear and be heard as the circumstances of the
case require"); *Hagar v. Reclamation Dist. No. 108,* 111 U.S. 701,
711 (1884) ("[I]t is essential that notice be given to the tax-
payer, and opportunity be afforded him to be heard respecting the
assessment. . . . If property taken upon an assessment, which can
only be enforced in this way, be not taken by due process of law,
then, as said by Mr. Justice Miller in the *New Orleans Case*,
these words, as used in the constitution, can have no definite
meaning.")(internal citation omitted).

    At hearings held before the Court on May 13, 2010 and June
17, 2010 the Government maintained that it had established a
constitutionally functioning Board.  In support of that position,
Roberts and Dawson testified that all appeals for tax year 2005
and prior have been resolved by the Board of Tax Review.  In
achieving that objective, the Board held hearings on August 14,
2009, August 28, 2009, September 28, 2009, October 30, 2009,
December 2, 2009, and December 14, 2009.  During those hearings
it heard 182 appeals.  It reached a determination on 151 appeals,
19 appeals were withdrawn, and 12 appeals were resolved via
settlement.  Dawson and Roberts testified that all taxpayer-
appellants received notice thirty days prior to the hearing of
their appeals.

*Berne Corp., et al. v. Government of the Virgin Islands, et al.*
Civil Nos. 2000-141, 2000-167, 2001-151, 2001-155, 2001-181, 2001-196,
2001-197, 2001-228, 2002-057
Memorandum Opinion
Page 12

Not all of the testimony at the Court's biannual review was favorable, however.  Some of the testimony suggested that there might have been some appeals that were not accounted for in the Government's campaign to resolve outstanding appeals.  The Plaintiffs questioned Roberts about a reporting anomaly that suggested that there were more appeals listed as heard in the period from August 2009 to December 14, 2009, than were reflected as pending in the Board's August 2009 report.

> MR. DERR: . . . This is Mr. Challenger's report dated August 7th, 2009, correct?
> MS. ROBERTS: That's correct.
> Q: And how many pending appeals did he say were outstanding on August 7th of 2009?
> A: He stated about 112.
>                          . . . .
> Q: And then I'd like you to take a look at Exhibit 1. That would be Defendant's Exhibit 1.  Do you have that before you?
> A: I do.
> Q: And how many appeals were dealt with by the time that that December 29th letter was written?
> A: Total appeals heard on 182.
> Q: Do you have any knowledge as to why there were 118 appeals pending on -- I'm sorry, 112 appeals pending on August 7th and 182 appeals dealt with by December 29th?
> A: I can't directly say.
> Q: Do you have any knowledge what happened to these missing appeals?
> A: I have no knowledge.
> Q: There weren't any new appeals filed between the dates of those two reports, were there?
> A: No, there were not.
> Q: So suddenly 80 appeals just appeared sometime between those two dates, correct? Correct?
> A: It appears so.

(Hr'g Tr. at 45-46, May 13, 2010.)

*Berne Corp., et al. v. Government of the Virgin Islands, et al.*
Civil Nos. 2000-141, 2000-167, 2001-151, 2001-155, 2001-181, 2001-196,
2001-197, 2001-228, 2002-057
Memorandum Opinion
Page 13

They also offered the testimony of Bennett Chan.  Chan
testified that he filed an appeal for which he has still not
received a hearing.  On cross-examination, the details of Chan's
appeal were imprecise.

> MS. THOMAS-JACOBS: So what do you mean by you had no
> independent knowledge when the -- just a while ago you
> just testified you had no independent knowledge?
> MR. CHAN: I just did not remember the exact year in
> which I filed the appeal because it was so long ago.
> Q: So it is possible you did not file a 1997 appeal
> since you cannot recall the exact year?
> A: I filed an appeal some time in the late 90's.
> Q: And where did you file the appeal?
> A: I don't recall exactly.
> Q: You don't recall where you took the appeal document?
> A: No, I don't.  It's very possible that I did not do
> that myself.

(*Id.* at 85.)

At the June 17, 2010 hearing, the Plaintiffs highlighted
several appeals of 1997 tax bills that had been reflected in a
register (the "June 2008 register") the Government had
previously tendered[2]. For a number of the 1997 tax bill appeals,
reflected in that register, there was no written determination
as to their resolution.

> MR. DERR: Now, I'll represent to you, Commissioner,
> that Exhibit H was filed as an attachment to the
> affidavit of Mr. Walter Challenger.  That is Docket
> Number 405 in our case.  And the document I've handed

---

[2] The relevant tax register had been produced by the Government in June,
2008, during discovery in this matter.

*Berne Corp., et al. v. Government of the Virgin Islands, et al.*
Civil Nos. 2000-141, 2000-167, 2001-151, 2001-155, 2001-181, 2001-196,
2001-197, 2001-228, 2002-057
Memorandum Opinion
Page 14

    you is 405 4.

. . . .

      There's a column there, specifically, that shows,
year appealed.  And you'll see, I believe, on those two
pages, all of the listings show 1997.
MR. DAWSON: That is correct.
Q: Do you have any knowledge at all as to what happened
with respect to those appeals.
A: There are no appeals presently before the Board, so
they must have been properly adjudicated.

. . . .

Q: So did anybody go back and look and see exactly what
happened with respect to each one of the 1997 appeals
that are reflected on Exhibit H?
A: I don't know that that was a requirement.

. . . .

Q: I'm a little confused, sir. Exhibit H would appear
to show that there are outstanding appeals from 1997,
correct?
A: That is your representation.
Q: And if, in fact, there had been dispositions of
those 1997 cases, there would be a written record of it
in the Board of Tax Review, correct?
A: Yes, there would be.
Q: And it would be simple to come up with a list that
show [sic] the disposition of each and every one of
those appeals so we can know exactly what happened to
it [sic], correct?
A: Yes, it would be.
Q: Has a document like that been generated, showing
specifically the disposition of the 1997 appeals?
A: Attorney Derr, it has been represented to me by the
Office of the Board of Tax Review and its executive
director that there are no appeals pending before the
Board. And if you have something that shows otherwise,
then perhaps that's a different discussion that we
should be having.

(Hr'g Tr. at 17-21, June 17, 2010.)

    When the Court first started conducting these reviews, the

Government's records were decidedly spotty.  Indeed, at one such

*Berne Corp., et al. v. Government of the Virgin Islands, et al.*
Civil Nos. 2000-141, 2000-167, 2001-151, 2001-155, 2001-181, 2001-196,
2001-197, 2001-228, 2002-057
Memorandum Opinion
Page 15

review, the former Executive Director of the Board of Tax

Review, Walter Challenger, testified that there was a paper

register for tax appeals. However, the register was not always

used to document the status of an appeal. *See* (Hr'g Tr. at --,

July 2, 2008.) Moreover, in a June 25, 2008 affidavit, attached

to the June 2008 register which lists several 1997 appeals for

which there is no individual written record of disposition,

Challenger stated that the "Register ha[d] not been updated to

reflect the resolution of the total number of appeals that were

resolved by the Board." (Aff. of Walter L. Challenger ¶¶ 4-5,

Jun. 25, 2008.) He continued that, "[t]he attached Register,

therefore, does not accurately reflect the number of appeals

currently pending before the Board." (*Id.*) Since that time,

however, the Board has made consistent inroads in the

development of its record-keeping procedures.

    The Board has conducted a comprehensive search of its

appeal files and has begun using an electronic register to

store information about appeals. It has undertaken an effort

to uniformly use the electronic register for the storage of

information about appeals.  The Government has repeatedly

averred that it has checked its records, and that there are

no appeals from tax year 2005 and prior pending before it in

light of its most recent inspection of its records.  To be

*Berne Corp., et al. v. Government of the Virgin Islands, et al.*
Civil Nos. 2000-141, 2000-167, 2001-151, 2001-155, 2001-181, 2001-196,
2001-197, 2001-228, 2002-057
Memorandum Opinion
Page 16

sure, testimony about reporting anomalies and omissions may

raise doubts about the Government's representation that it

has cleared its tax appeals docket.  On balance, however,

those incidents are few and far between.  Moreover, the

Court does not find that vague testimony about outstanding

appeals, and references to appeals listed on the June 2008

register, present compelling evidence that the Board has

neglected appeals.

More problematic than its cataloging difficulties, the

Board lacked a consistent method for hearing and disposing

of appeals.  When the Court issued its injunction, it noted

that though the Virgin Islands Code provided a mechanism for

the timely hearing of taxpayer appeals, the implementation

of the tax system fell short:

> Notwithstanding the fact that anywhere from 500 to
> 1000 tax appeals are filed annually, the Board has
> met only *twenty-one times over the past five
> years,* and has had a quorum of board members
> present only for approximately half of those
> meetings. (Turnbull Test., Tr. IV at 156.) Based
> on these numbers, the Board would need to resolve
> hundreds of appeals each time it meets, a level of
> productivity it has never approached. Indeed, the
> Board takes up to seven years, and usually from
> three to five years, to schedule a hearing on an
> appeal. Even when and if the Board makes a
> determination that results in a refund to the
> taxpayer, the Department of Finance does not pay
> the taxpayer within thirty days of the Board's
> decision, as required by 33 V.I.C. § 2451(b).

*Berne Corp., et al. v. Government of the Virgin Islands, et al.*
Civil Nos. 2000-141, 2000-167, 2001-151, 2001-155, 2001-181, 2001-196,
2001-197, 2001-228, 2002-057
Memorandum Opinion
Page 17

*Berne,* 262 F.Supp.2d at 570.

The deficiencies of which the Court spoke then are not present today.  Indeed, in recent years, the Defendants have consistently engaged in efforts to improve the Board's operations.  To that end, the Board has shown itself capable of efficiently hearing and deciding appeals.  It has met regularly and resolved hundreds of long-standing appeals since the injunction's issuance.  A quorum was present at all of the hearings held by the Board in 2009.  It has sent notice thirty days in advance of such hearings.  A hearing examiner has been hired.  The hearing examiner is hearing and deciding appeals.  To the extent refunds were required, the Department of Finance has sent refunds to successful taxpayer-appellants.[3]

Significantly, in sending out notices which indicate the date, time, and location of a hearing, thirty days in advance of hearing an appeal, the Board has addressed an

_____

[3] The Court also notes that the Government has filed the Board's Rules and Regulations for property tax appeals which it asserts will be put into effect shortly.  The stated goal of the Rules and Regulations is "to regulate and ensure the coordinated, orderly and uniform administration of appeals before the Board of Tax Review and to govern the conduct of hearings and proceedings before the Board of Tax Review." (Ex. 1, Notice of Filing Rules and Regulations 3.)  The Rules and Regulations outline procedures for the filing and hearing appeals.  Building on requirements already set forth in the Virgin Islands Code, they provide guidance on how hearings will be conducted, evidence will be admitted, and the burden of proof will operate at hearings in the future.

*Berne Corp., et al. v. Government of the Virgin Islands, et al.*
Civil Nos. 2000-141, 2000-167, 2001-151, 2001-155, 2001-181, 2001-196,
2001-197, 2001-228, 2002-057
Memorandum Opinion
Page 18

important due process concern -- adequate notice.  *See*

*Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 13

(1978)(noting that "[t]he purpose of notice under the Due

Process Clause is to apprise the affected individual of, and

permit adequate preparation for, an impending "hearing'");

*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306,

414 (1950)(holding that adequate notice "must be of such

nature as reasonably to convey the required information, and

it must afford a reasonable time for those interested to

make their appearance"); *Whitney v. Nat'l Grape Co-op Ass'n,*

*Inc.*, 842 F.2d 336 (9th Cir. 1988)(finding that a notice to

a member of an agricultural cooperative of a hearing

regarding his expulsion from the cooperative was

constitutionally sufficient where a letter was mailed three

weeks prior to such hearing, and detailed the section of the

cooperative's bylaws that the plaintiff allegedly violated,

the date and location of the alleged violation, the hearing

date and location, and his right to be represented by

counsel and offer facts and cross-examine witnesses)

(unpublished); *Reynolds v. National Football League*, 584

F.2d 280, 285 (8th Cir. 1978)(finding that in the context of

a hearing to review a settlement of a class action suit,

notice should "enable[] class members rationally to decide

*Berne Corp., et al. v. Government of the Virgin Islands, et al.*
Civil Nos. 2000-141, 2000-167, 2001-151, 2001-155, 2001-181, 2001-196,
2001-197, 2001-228, 2002-057
Memorandum Opinion
Page 19

whether they should intervene in the settlement proceedings or otherwise make their views known, and if they choose to become actively involved, to have sufficient opportunity to prepare their position" to satisfy due process requirements).

The Board also allows taxpayer-appellants an opportunity to present evidence in support of their appeal at a hearing. By holding hearings at which taxpayer-appellants can challenge a tax assessment, the Board has addressed yet another important component of due process–providing citizens with an opportunity to be heard. *See Ricardo v. Ambrose*, 211 F.2d 212, 221 (3d Cir. 1954)(finding that the due process right to a hearing was satisfied where a taxpayer were given the opportunity to be heard regarding a challenge to their tax assessment before the Board of Review and on appeal from the Board to the district court).

While this progress is noteworthy, it has not been free from attack. Indeed, it has been suggested that the Board of Tax Review should demonstrate its capacity to manage appeals of the revised 2006 tax bills prior to a lifting of the injunction. In a similar vein, the Court has been invited to forebear on making any modification to, or lifting of, the Court's injunction because the revised 2006

*Berne Corp., et al. v. Government of the Virgin Islands, et al.*
Civil Nos. 2000-141, 2000-167, 2001-151, 2001-155, 2001-181, 2001-196,
2001-197, 2001-228, 2002-057
Memorandum Opinion
Page 20

tax bills would overwhelm the Board with new appeals and result in the denial of due process to taxpayer-appellants. The Court must decline that invitation as the underlying suggestion is not a proper basis for declining relief.

The strength of the Board's operations under different types of demands will be borne out in due time. However, preserving an injunction based on predictions that have no basis in the Board's recent performance, but instead seem to be fatalistic prognostications, would be inequitable. *See Sys. Fed'n No. 91 Ry. Employees' Dep't v. Wright*, 364 U.S. 642, 647 (1961)("[A] sound judicial discretion may call for the modification of the terms of an injunctive decree if the circumstances, whether of law or fact, obtaining at the time of its issuance have changed, or new ones have since arisen."); *Favia v. Indiana Univ. of Pa.,* 7 F.3d 332, 337 (3d Cir. 1993)(noting that modification of an injunction is appropriate where circumstances have changed from the date of the issuance of injunction to the date a party moves for modification).

## IV. <u>CONCLUSION</u>

This litigation has had a long, and to some, a tortured history.

*Berne Corp., et al. v. Government of the Virgin Islands, et al.*
Civil Nos. 2000-141, 2000-167, 2001-151, 2001-155, 2001-181, 2001-196,
2001-197, 2001-228, 2002-057
Memorandum Opinion
Page 21

When this litigation commenced, the Government's operations were woefully deficient.  Due process did not attend the Board's operations. In the face of these deficiencies, planned improvements seemed always to die aborning.  Under these circumstances, it would be tempting to conclude that the past would always foreshadow the prologue.  To permanently wed the Government to this history, however, would be unfair as it suggests that the Government is incapable of positive sea change, of a magnitude bespoke in literature:

> Full fathom five thy father lies;
> Of his bones are coral made:
> Those are pearls that were his eyes:
> Nothing of him that doth fade,
> But doth suffer a sea-change
> Into something rich and strange.

WILLIAM SHAKESPEARE, THE TEMPEST, Act I, scene ii.

Indeed, something rich and heretofore uncommon, evolved.  The Board did precisely what the Constitution mandates.  It demonstrated that it was capable of affording taxpayers due process.

Given the current status of the Board's operations, the Court finds that circumstances have changed such that continuing to maintain the injunction prospectively would "no longer meet the requirements of equity." *Sweenton v.*

*Berne Corp., et al. v. Government of the Virgin Islands, et al.*
Civil Nos. 2000-141, 2000-167, 2001-151, 2001-155, 2001-181, 2001-196,
2001-197, 2001-228, 2002-057
Memorandum Opinion
Page 22

*Brown*, 27 F.3d 1162, 1166-67(6th Cir. 1994).

For the reasons discussed above, the Court will vacate the portion of its May 12, 2003 Decree enjoining the Government from issuing and collecting tax bills at rates other than those based on the 1998 assessments.  The Court will allow the Government to issue and collect tax bills prospectively from tax year 2010 at rates other than those based on the 1998 assessments.

Mindful of the transition period that will accompany the lifting of the injunction, the Court will continue to monitor the Board's operations for a six-month period.

An appropriate Order follows.

S_____
        **CURTIS V. GÓMEZ**
          **Chief Judge**